COMMONWEALTH *vs.* ROBERT L. McCARTHY & another (and two companion cases).

Suffolk. May 4, 1964. — July 13, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Constitutional Law,* Assistance of counsel, Due process of law. *Practice, Criminal,* Assistance of counsel; Exceptions: whether error harmful; Examination of witnesses; Verdict; New trial. *Federal Law. Error,* Whether error harmful. *Evidence,* Admissions and confessions, Cross-examination, Judicial discretion. *Homicide.*

The decision in *Massiah* v. *United States,* 377 U. S. 201, that there is a contravention of the guaranty of assistance of counsel under the Sixth

Amendment of the Federal Constitution when an incriminating statement is obtained from an indicted defendant in unwaived absence of his counsel, so that the statement cannot be used against him at his trial, was, by reason of the applicability of such guaranty to the States under the Fourteenth Amendment, controlling in criminal cases pending before this court after that decision although the cases had been tried in the trial court before it was rendered. [11–12]

Evidence of the circumstances in which police officers obtained a plainly incriminating statement from an indicted defendant in unwaived absence of his counsel required, under *Massiah* v. *United States,* 377 U. S. 201, a conclusion that the statement was obtained in contravention of the guaranty of assistance of counsel in the Sixth Amendment of the Federal Constitution, which is applicable to the States under the Fourteenth Amendment, and, absent corroboration of the statement in the defendant's testimony at the trial of the indictment, error in admitting the statement in evidence was prejudicial even though he could have been convicted without consideration of the statement. [12–13]

Where a defendant was indicted both for murder and for unlawfully carrying a firearm and a statement incriminating him on the murder charge obtained from him in contravention of his constitutional rights was erroneously and prejudicially admitted in evidence at the trial of the indictments together, so that a conviction on the indictment for murder must be reversed, a conviction on the other indictment was also reversed since it was uncertain what the evidence as to the firearm would have been if the statement had not been in evidence; and a new trial of both indictments was ordered. [13, 15]

No abuse of discretion appeared at the trial together of indictments against two defendants, both defended by the same two attorneys, in refusing to allow one of the attorneys to examine defence witnesses after the other attorney had cross-examined witnesses for the prosecution and had examined some of the defence witnesses. [13–14]

There was no abuse of discretion at the trial of indictments in the exclusion of extrinsic evidence of police coercion of testimony of a witness whom the defendants had been permitted to cross-examine in respect to coercion. [14]

Any inconsistency between verdicts that the defendant in a criminal case was not guilty of conspiracy to commit armed robbery of a certain man and assault with intent to rob him on the one hand and a verdict of guilty of murdering him on the other showed no error in the verdict for murder. [14]

Upon review under G. L. c. 278, § 33E, of a capital case in which two defendants were tried together and convicted of murder in the second degree of a man in a fracas in which one defendant was armed with a gun and the second defendant with a club, and medical testimony showed that the victim was killed with a shot from the gun and not with blows from the club so that guilt of the second defendant depended upon his being engaged in joint illegal conduct with the first defendant, and this court reversed the conviction of the first defendant and ordered a new trial for him, justice required reversal also of the conviction of the second defendant and a new trial for him. [14–15]

INDICTMENTS found and returned on November 5, 1962.

The cases were tried in the Superior Court before *Forte, J.*

*F. Lee Bailey* for the defendant William E. McCarthy.

*Robert A. Barton* for the defendant Robert L. McCarthy.

*John F. McAuliffe,* Assistant District Attorney, for the Commonwealth.

WHITTEMORE, J.   These are appeals under the provisions of G. L. c. 278, §§ 33A–33G, as amended through St. 1962, c. 453.   Both defendants were tried before a jury on indictments charging murder in the first degree, conspiracy to commit armed robbery, and assault with intent to rob.   The defendants, Robert L. McCarthy and William E. McCarthy, were charged with assault and battery by means of a dangerous weapon, and William was charged with unlawfully carrying a firearm.   Robert and William were both convicted of murder in the second degree.   Robert was convicted of assault and battery by means of a dangerous weapon, and William of unlawfully carrying a firearm. Both defendants were acquitted on all other charges.

There was testimony that on October 19, 1962, at 9:30 or 10 P.M. the decedent, Irving Sandman, accompanied by Kathleen Anderson, entered a vacant house which Robert owned in the Roxbury section of Boston.   The house was almost totally dark.   Robert, armed with a club, and William, armed with a gun belonging to Robert, were waiting inside.   Anderson preceded Sandman into the house. When Sandman entered, Robert struck him with the club; Sandman resisted the assault and for an indeterminate period the two men wrestled in the hallway and the front room adjacent to it.   In the scuffle, Robert, according to his testimony, received a kick in the groin; in severe pain, he opened the front door, went to the gutter and attempted to vomit.   During most of the struggle, William had been in another room, but before the fight was finished William entered the front room into which Sandman and Robert then tumbled during their struggle.   After Robert had left, Sandman attempted to grab William or drag him to the

floor.   In the ensuing fracas, or as William was leaving the scene, he fired the fatal shot.

Sandman, who was shot in the abdomen, managed to drive his car to a police station.   Taken to a hospital he died the next morning.   Robert was arrested the day after the incident.   The grand jury returned indictments on November 5, 1962, embodying the charges upon which William and Robert were later convicted.   William, who fled from Boston after the shooting, was apprehended in Illinois in May, 1963.

Anderson was a tenant and part time employee of Robert. Robert's office and her apartment were at 84 Cottage Street. On the evening of October 19, according to her testimony, Robert and William were riding with her in a taxicab.   She was on her way to an engagement with Sandman.   William then told her to be sure to check the vacant house, and Robert told her to bring Sandman back to 84 Cottage Street so that they could discuss business.

Anderson's son testified that earlier that evening he had heard Robert tell his mother "something about having Irving take her to check the house, something like that."

Other facts are stated below.

### I.   William E. McCarthy.

Before trial, counsel for William moved to suppress a statement made by William to two Boston police officers. The motion was denied without prejudice and when the prosecution sought later to place the statement in evidence the motion to suppress was renewed.   The judge then excused the jury and held a hearing on the admissibility of the statement.   Undisputed evidence showed that the statement was made in Oak Forest, Illinois, on the evening of May 23, 1963, more than six months after the indictment naming William had been returned.   The officers who interrogated William were called and testified that they spoke with William for approximately three quarters of an hour before taking William's statement.   One of the officers testified that at the time of the interrogation he knew that a Boston

attorney represented William. The attorney had stated during a pretrial hearing that he had been retained by William's mother at a time when the whereabouts of William were unknown. The officers also testified that William first asked about legal counsel after he had made his statement to the stenographer. This was contradicted by William who testified that he had requested a lawyer at some time during the discussion prior to the time he made the formal statement. William and the two officers also testified as to facts bearing on whether the statement had been coerced. The judge found that the statement was voluntarily made and that it was admissible against William notwithstanding the claimed deprivation of counsel. The judge instructed the jury to disregard the statement if they found it was not voluntarily given. See *Jackson* v. *Denno,* 378 U. S. 368.

The case of *Massiah* v. *United States,* 377 U. S. 201, decided after the trial of these defendants, establishes that it was error to admit William's statement.

In the *Massiah* case, the court held that a damaging admission "which federal agents had deliberately elicited from" the defendant "after he had been indicted and in the absence of his counsel" should be excluded in a Federal prosecution since the circumstances in which the admission was obtained contravened the Sixth Amendment guaranty of counsel in Federal prosecutions. *Id.* at 206. A "Constitution which guarantees a defendant the aid of counsel at . . . trial could surely vouchsafe no less to an indicted defendant . . . in a completely extrajudicial proceeding." *Id.* at 204. The Sixth Amendment guaranty of counsel is "obligatory on the States" under the Fourteenth Amendment. *Gideon* v. *Wainwright,* 372 U. S. 335, 342. *Escobedo* v. *Illinois,* 378 U. S. 478.

In the light of these holdings it may no longer be assumed that the absence of counsel prior to the time when the defendant is "brought into court" may be disregarded. See *Commonwealth* v. *McNeil,* 328 Mass. 436, 438; G. L. c. 276, § 37A; c. 277, § 47.

In the *Massiah* case the defendant did not know that his remarks to a confederate who was coöperating with the

authorities were being overheard. But we do not under-
stand the holding to turn on that point. The court in gen-
eral terms stated a rule against interrogation after indict-
ment in the absence of counsel. This is now a constitu-
tional principle applicable to these cases. The record does
not show that William waived his right to counsel.

William's statement was plainly prejudicial. He as-
serted that he and Anderson had planned to lure Sandman
to the vacant house for the purpose of robbing him, and
that while Robert knew of the plan he thought it a joke.
Both William and Robert had been drinking heavily ac-
cording to William's statement and Sandman when he en-
tered the house wrestled with Robert for a time. Accord-
ing to the statement Robert did not wield either the club or
the gun and it was William who beat Sandman with the
club and then shot him.

In important particulars William did not corroborate this
statement in his testimony at the trial. He testified that he
was driving with Robert when the latter discovered that
the door of his vacant house was open. They entered the
house. Robert said that he had had many things stolen.
Robert checked the house and noticed that his water tank
was near the back door, where it had not been previously.
"He thought they were trying to take that, too." Robert
went out to move his truck planning to come back. He
wanted to drop William at Robert's office but William said
he would "stick around with" Robert. They returned with
two quarts of beer. The house was dark. Robert said,
"you check the back, and I will check the front." Robert
checked the house again; William heard Robert say, "Here
they come back." Robert handed him the gun, saying
"You wait here . . . [in the dining room] I will take care
of this." William then heard scuffling, he cocked the gun,
went into the front room, and saw two forms. The forms
came tumbling through the hall and hit him; he fell back-
wards and he saw Robert get up and leave looking sick.
The other person grabbed William who swung the gun,
struck out with his fists and hit the person with the gun.

William went toward the hallway and "got grabbed . . . again" and as he was "going backwards, . . . the gun just kept going off. I just pulled the trigger. . . . I don't know if I pulled the trigger or if the gun was just going off . . . I fired the gun . . . several times . . . I didn't actually mean to shoot the gun. . . . I was frightened . . . ." On cross-examination William testified that the person "grabbed" him as he was going to the front door to join his brother outside, there was a struggle and William "got hit" and twisted and "started firing the gun."

We are not concerned with whether William could have been convicted without the evidence complained of. We assume that he could. The confession was obtained in contravention of a Federal constitutional guaranty. The question at the very least "is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy* v. *Connecticut,* 375 U. S. 85, 86–87. Obviously it could have done so as to the charge of murder. We cannot say that it could not have done so as to the charge of unlawfully carrying a firearm. It is uncertain what the testimony at the trial as to the gun would have been if the confession had not been in evidence. We may not apply to this case the alternative holding of *Commonwealth* v. *McNeil,* 328 Mass. 436, 438–440, that there is no reversible error where the defendant "testified to all the essential facts contained in his confession."

We need not consider in what circumstances, if any, a rule of harmless error in respect of confessions would be applicable. See *Fahy* v. *Connecticut,* 375 U. S. 85, 86.[1] Compare *Commonwealth* v. *Palladino,* 346 Mass. 720, 725.

It was within the judge's discretion not to allow one of the two attorneys who had appeared for both William and

---

[1] In *Fahy* v. *Connecticut, supra,* Mr. Justice Harlan, in dissent, reached the issue whether a State could constitutionally apply a rule of harmless error to the admission of evidence obtained by an illegal search and seizure and argued that it could. He said: "Cases in which this Court has held that the sufficiency of other evidence will not validate a conviction if an unconstitutionally obtained confession is introduced at trial, *e.g., Malinski* v. *New York,* 324 U. S. 401, are inapposite. It may well be that a confession is never to be considered as nonprejudicial." *Id.* at 95.

Robert to examine defence witnesses after the other attorney had cross-examined witnesses for the prosecution and examined three of the defence witnesses.

The only assignments of error other than those already considered that we deem it necessary to notice are those that relate to the attempts of the defendants to show that Anderson's testimony resulted from police coercion. The defendants may cross-examine to show facts that reasonably suggest the untrustworthiness of the testimony of a witness. *Commonwealth* v. *Russ,* 232 Mass. 58, 79. However, much must be left to the discretion of the trial judge. *Commonwealth* v. *Harrison,* 342 Mass. 279, 286, and cases cited. The trial judge permitted cross-examination of Anderson in respect of the claimed pressures and excluded extrinsic evidence. There was no abuse of discretion.

## II.  Robert L. McCarthy.

The medical testimony showed that William's shot and not Robert's blows with the club killed Sandman. Robert's conviction for murder depends upon his being engaged in joint illegal conduct with William in the course of which William fired the fatal shot. *Commonwealth* v. *Campbell,* 7 Allen, 541, 543-544. *Commonwealth* v. *Devereaux,* 256 Mass. 387, 395-396. *Commonwealth* v. *Lussier,* 333 Mass. 83, 93-94. Robert urges as ground for a new trial inconsistency in the verdicts as to him. Even if there were inconsistency between the verdicts of not guilty of conspiracy to commit armed robbery and assault with intent to rob on the one hand and the verdict of murder on the other it would not be such as to show error in the verdict for murder. *Dunn* v. *United States,* 284 U. S. 390, 393. *Borum* v. *United States,* 284 U. S. 596. *United States* v. *Coplon,* 185 F. 2d 629 (2d Cir.), cert. den. 342 U. S. 920. Anderson, Wharton's Criminal Law & Procedure, § 2128. Compare *Commonwealth* v. *Haskins,* 128 Mass. 60 (verdicts for larceny and receiving the same goods necessarily inconsistent); *United States* v. *Maybury,* 274 F. 2d 899 (2d Cir.) (jury waived trial). But the two men were tried together

and Robert's conviction of murder depended upon a finding that William committed murder. That finding now being vacated as to William, justice in our view requires a new trial for Robert. G. L. c. 278, § 33E ("may . . . for any . . . reason that justice may require . . . order a new trial"). *Commonwealth* v. *Cox,* 327 Mass. 609, 615. *Commonwealth* v. *Baker,* 346 Mass. 107, 109. Compare *Commonwealth* v. *DiStasio,* 298 Mass. 562, 565–566 (accessory was tried separately after conviction of principal).

There appears no error in respect of the conviction of Robert for assault with a dangerous weapon.

### III.

The judgments against William are reversed and the verdicts set aside. The judgment against Robert for murder is also reversed and the verdict set aside. The indictments underlying these judgments are to stand for trial in the Superior Court. The judgment against Robert for assault with a dangerous weapon is affirmed.

*So ordered.*