COMMONWEALTH *vs.* THOMAS A. GUERRO.

Worcester. March 1, 1965. — June 8, 1965.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Constitutional Law,* Raising question of constitutionality, Assistance of counsel. *Practice, Criminal,* Appeal; Exceptions: what questions open, whether error shown, whether error harmful; Assistance of counsel. *Evidence,* Admissions and confessions, Ground of objection, Evidence of identity. *Error,* Whether error shown, Whether error harmful.

The fact that a constitutional question under a certain decision of the Supreme Court of the United States was not raised by the defendant at the trial of a criminal case before that decision did not preclude the defendant, after that decision, from raising such question in this court on a record containing an adequate factual basis for consideration thereof.   [280–281]

Where it appeared in a criminal case that shortly after a robbery the defendant was arrested on a street and taken to a police station where he was questioned by police officers for some five hours and was told during the interrogation that he had been identified as the robber, and that his requests for an opportunity to consult his counsel were denied until after the interrogation, and it did not appear that he was informed of his right to remain silent, incriminating statements elicited from him during the interrogation were inadmissible at his trial under *Escobedo* v. *Illinois,* 378 U. S. 478, as having been obtained in violation of his right to assistance of counsel under the Sixth Amendment of the Federal Constitution [281–282]; KIRK, J., concurring.

Error in admitting at a criminal trial incriminating statements elicited from the defendant in violation of his constitutional right to assistance of counsel was prejudicial even though there was other evidence adequate to support a conviction.   [282]

A conversation between a prisoner in a police station cell and his family, which was overheard by officers stationed nearby, was admissible at the prisoner's trial.   [282]

At the trial of an indictment for armed robbery of a bank, there was no error in permitting a teller of the bank to identify the defendant as the robber on the basis of having heard the robber's voice during the robbery and having heard the defendant's voice at a police station.   [282–283]

INDICTMENTS found and returned on May 14, 1963.

The cases were tried in the Superior Court before *Meagher, J.*

*H. Hoover Garabedian* for the defendant.

*Manuel Morse,* Assistant District Attorney, for the Commonwealth.

REARDON, J.   The defendant Guerro appeals, pursuant to G. L. c. 278, §§ 33A–33G, from judgments of guilty of armed robbery and related offences.   Of the twenty-six assignments of error filed by the defendant eight assignments (Nos. 1, 2, 12, 15, 16, 24, 25 and 26) have not been argued.

1.   Numerous assignments of error (Nos. 7, 8, 9, 11, 13, 14, 17, 20 and 21) have been consolidated by the defendant in his brief.   His principal contention is that prejudicial evidence was admitted and that his constitutional rights

were thereby violated.   These assignments relate primarily
to events which took place at the Worcester police station
to which the defendant was taken subsequent to his appre-
hension by the police.

On February 12, 1963, at approximately 11:35 A.M., two
men, armed and masked, entered the People's Savings Bank
at Webster Square Plaza in Worcester and robbed it of
$12,569.   A short time later, about 11:50 A.M., Officer Thy-
den of the Worcester police department saw an automobile
reportedly used in the holdup "turn into Jacques Street."
He proceeded on his motorcycle to Jacques Street, stopped,
and saw the defendant walking towards him.   The officer
drew his revolver and ordered the defendant to stop; he
"patted him down" to ascertain whether the defendant was
armed.   A second officer arrived at the scene, followed
shortly by a third, who was accompanied by a teller em-
ployed at the bank.   The teller informed the officers that
the defendant was "about the same size" as one of the
holdup men.   The defendant said, "You're sending an in-
nocent man to jail."   The teller then said that he "thought
this was the same voice" that he had heard at the bank.

The defendant was taken from Jacques Street to the de-
tective bureau, arriving "in the vicinity of noontime."
He was under arrest.   He was taken to a room and told to
remove his clothes, which were returned to him a few min-
utes later.   For approximately five hours the defendant
was questioned by police officers.   At all times at least one
officer was with the defendant.   The defendant, as early as
12:15 P.M., requested permission "to call my lawyer."   A
police officer testified that Guerro asked "two or three
times" for "an opportunity to use the telephone to call his
lawyer."   It is uncontroverted that he was not permitted
to make a telephone call; and the record does not reveal
that he was informed of his right to remain silent.   He first
met with counsel at 6:30 P.M.

During the questioning of the defendant he was asked by
a police officer to "level with us" and "tell us about the
bank holdup."   He was told that witnesses had identified

him. Sergeant O'Brien, one of the officers who interrogated him, testified that Guerro replied, "[T]hose witnesses will all change their stories before we go to trial on this one, the same as your other witnesses did before." O'Brien testified that Guerro said that the officer who stopped him on Jacques Street "only saw me walking away from the car, or, I mean to say, he only saw me walking by the car." When asked by O'Brien whether he had worn a particular hat during the holdup, the defendant replied, "Yes, all morning." When Guerro was asked to reveal his address he replied, "[L]et me think about whether or not I left anything incriminating in there." Guerro also said, according to O'Brien, "I won't level with you. Book me now and let's get this over with. . . . I could keep telling you lies all afternoon and have you running around in circles . . .." O'Brien asked the defendant what he would say if told his fingerprints were on the holdup car, to which the defendant answered, "[I]f they were there, I would say I was ruining my professional standing." Guerro was wearing two coats when apprehended, and O'Brien commented that the second holdup man "must be running around without anything on." Guerro said, "The other guy's probably running around with a bagful of money."

The defendant argues that the admission in evidence of the police officers' testimony violates his constitutional rights. In support of this contention he relies on *Escobedo* v. *Illinois,* 378 U. S. 478, decided subsequent to the trial of the defendant. The Commonwealth argues that the defendant cannot, on appeal, for the first time raise a constitutional question.

The defendant's assignments of error stem from objections made and exceptions taken either on grounds of materiality or for no stated reason at all. If the *Escobedo* case had been decided prior to the trial, counsel would have had to state the constitutional grounds for his objection. See *Commonwealth* v. *Lewis,* 346 Mass. 373, 383. We have recently decided, in *Commonwealth* v. *Fancy, ante,* 196, 205–206, that an issue based on the *Escobedo* decision cannot be

raised where the record does not contain a sufficient factual basis for the court to consider the asserted constitutional objections.   See *People* v. *Farrara,* 46 Cal. 2d 265, 268–269.   The situation here differs and is analogous to *People* v. *Kitchens,* 46 Cal. 2d 260, a case in which the trial was conducted prior to the decision in *People* v. *Cahan,* 44 Cal. 2d 434 (a holding similar to that in *Mapp* v. *Ohio,* 367 U. S. 643), and in which an appeal was taken after that decision.   The court's opinion states that "the rule that ordinarily the admissibility of evidence will not be reviewed on appeal in the absence of a proper objection in the trial court . . . is not applicable to appeals based on the admission of illegally obtained evidence in cases that were tried before the *Cahan* decision."   We agree with the rationale of the *Kitchens* decision and hold that in the present circumstances *Commonwealth* v. *Lewis, supra,* is not controlling.   Where, as here, the record contains an adequate factual basis upon which contentions relative to the *Escobedo* decision may be considered, counsel's failure at trial to specify a constitutional basis for the exclusion of evidence does not preclude our consideration of the constitutional issue.   As in *Commonwealth* v. *Spofford,* 343 Mass. 703, 707, " [w]e are here concerned with retroactive operation only in a limited sense, as the appeal is before us in regular course for decision on the law as it presently stands."

We turn now to the merits of the defendant's constitutional argument.   When the judge ruled that the testimony of the police officers relating to the interrogation was admissible, the ruling was proper on the law as it then stood. *Escobedo* v. *Illinois,* 378 U. S. 478, 490–491, held, however, that "where . . . the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain

silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' *Gideon* v. *Wainwright,* 372 U. S., at 342, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial.'' We have examined with care the circumstances of the arrest and interrogation of the defendant and conclude that he was unconstitutionally deprived of his right to ''the Assistance of Counsel'' as this right is formulated in *Escobedo* v. *Illinois, supra.* We cannot conclude that when the defendant's statements were uttered the investigation was ''investigatory'' and had not ''begun to focus on a particular suspect.'' Nor can we say that the evidence admitted was not prejudicial. The issue is not whether there was sufficient other evidence upon which the defendant could have been convicted; rather it is whether a ''reasonable possibility'' exists ''that the evidence complained of might have contributed to the conviction.'' *Fahy* v. *Connecticut,* 375 U. S. 85, 86–87. *Commonwealth* v. *McCarthy,* 348 Mass. 7, 13. The jury could have chosen to believe the police officers and not the defendant, who contradicted the officers' testimony. The police testimony could have carried significant weight in the jury's determination of guilt.

2. Since there must be a new trial we shall discuss briefly other questions raised by the defendant. Two police officers positioned themselves near his cell during the evening of February 12, 1963, and overheard conversations between him and his family. He assigns as error the admission in evidence of what the officers heard. *Massiah* v. *United States,* 377 U. S. 201, on which the defendant relies, is not applicable for here there was no ''arrangement'' between the police and a third party for purposes of eliciting incriminating statements. Under *Commonwealth* v. *Dougherty,* 343 Mass. 299, 303–305, which we consider controlling, the evidence was admissible.

3. It is contended that it was error, as a matter of law, to permit a bank teller to identify the defendant as one of

the holdup men when the teller admitted that he was nervous and in fear at the time of the robbery and saw no portion of the man's flesh. We reject this contention. The teller heard the voice of the holdup man at the bank and of the defendant at the police station. This was a basis for identification and the evidence was properly submitted to the jury. *Commonwealth* v. *Hayes,* 138 Mass. 185, 186. See *Commonwealth* v. *Rollins,* 242 Mass. 427, 429.

4. We need not discuss other contentions of the defendant. We have examined·them and need only say that no other error has been shown.

*Judgments reversed.*

KIRK, J. (concurring) I agree with the result. The opinion, in my judgment, however, should rest solely on the undisputed fact that the defendant, having become the prime suspect, was denied, after his request, the opportunity to consult counsel.