STATE of Missouri, Respondent,

v.

Carl Thomas WITT, Appellant.

No. 51741.

Supreme Court of Missouri,
Division No. 2.

Dec. 11, 1967.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 8, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Robert K. Spalding, Sp. Asst. Atty. Gen., Clayton, for respondent.

C. LeRoy Snodgrass, Tuscumbia, for appellant.

PER CURIAM:

On August 25, 1964, about 2:20 in the afternoon, the nude and rapidly decaying body of Woodrow Wilson, age 27, was found in an unused septic tank in Eldon. Wilson weighed 115 to 120 pounds and his body was particularly identified by a "small," crippled left arm. There were abrasions on his side and chest, four front teeth were knocked loose and his jaw was badly fractured. A pathologist said that there were three small fractures at the back and base of his skull, there had been a concussion and hemorrhage in his brain and it was the opinion of the doctor that these injuries and eventually his death resulted from "(a) blow or heavy fall in which the back of the head was struck on some smooth surface"—the blow could have been from a fist. In the information it was charged that on August 21, 1964, Carl Witt and Donald Marriott killed Wilson by beating him to death with their fists, from one of the admissions it was a permissible inference that Wilson was still alive when they stuffed his body in the septic tank. After a severance and change of venue to Moniteau County a jury found the appellant Witt guilty of murder in the second degree and fixed his punishment at thirty years' imprisonment.

It was established, independently of any oral admissions Witt may have made, that Wilson was last seen in and around the Hilltop Tavern and other "beer joints" with Witt and Marriott and so upon Wilson's disappearance inquiry and finally suspicion was directed to them. It is not necessary to review all the circumstances in detail, it is sufficient to say that with Witt's oral admissions the state made a case but without them it is indeed doubtful that a case of second degree murder was made. Witt made different admissions to police and other officials on several occasions but only two were introduced, relied upon by the state and are involved upon this appeal, the first in the highway patrol office in Jefferson City to a patrol officer and to the sheriff and prosecuting attorney of Miller County and the second in the prosecuting attorney's office in Tuscumbia to another patrol officer and to the sheriff and the prosecuting attorney of Miller County. In his motion to suppress evidence, in his objections upon the trial of the cause and here Witt attacks these two separate admissions as well as others and in addition a search of his automobile but it is only necessary to a disposition of this appeal to consider whether his second series of admissions were obtained in circumstances violative of his state and federally protected constitutional rights—if so, it was manifest prejudicial error to admit them in evidence.

As to the first admissions, on August 26th, before he had been formally charged with the offense, Witt was taken to Jefferson City for a polygraph test but the test was not given because as Lieutenant Eidson said he made the admission "said that he would tell me as near as he could what happened, which he proceeded to do so. * * * He told me that they were down to this tavern, he and the deceased and third party * * * they were at the tavern, the three of them. They got in the car and left the tavern and drove a little ways and he and the deceased had an argument. They got out of the car, and he first told me that he slapped him, the deceased. And then they went on down the road a little ways, that is walked down the road a little ways, and the deceased fell down. He later told me a couple of times—just in conversation, that he hit the defendant. * * * The defendant said he hit the deceased. Then he said after they were down the road a little ways, the deceased fell down, and they picked him up and put him back in the car and drove around with him awhile. And then they took him up to the Eldon Concrete Block

Factory (Witt's place of employment) * * * and stopped near a septic tank, and he and the third party put him into the septic tank, put the deceased into the septic tank. * * * They did remove the clothing and the third party climbed upon the septic tank and he helped him climb up, helped get the deceased up."

On this date, August 26, Witt had not been arrested or charged with Wilson's murder and had not then employed a lawyer. The lieutenant testified that on that occasion and before Witt repeated his statement the prosecuting attorney advised him of his right to counsel and "he (Witt) asked you if you could represent him. * * * He asked him if he could or would represent him—something to that effect." A warrant was issued and Witt was arrested the following day, August 27, and thereafter, failing to make bond, was held in the Miller County jail at Tuscumbia. Thereafter, between August 27 and September 4, the defendants, and their lawyers and the prosecuting attorney met in magistrate court to agree upon a date for a preliminary hearing, by then Witt had employed Mr. Snodgrass, and counsel for the state and the defendants agreed on a day, the following Tuesday. Accordingly, on September 4, 1964, a preliminary hearing was held and both Marriott and Witt were represented by counsel, the appellant by Mr. Snodgrass, the record recites that "Hon. William F. Berry, Jr., announces at this time that he is attorney for the defendant, Donald Eugene Marriott and that the Hon. Leroy Snodgrass is attorney for the defendant, Carl Thomas Witt." Both defendants were bound over and on September 9, 1964, a transcript of the proceedings in magistrate court was filed in the circuit court and on September 21, 1964, the prosecuting attorney filed an information charging Marriott and Witt with Wilson's murder on August 21, 1964. Also the record recites that on September 23, 1964, "come the Prosecuting Attorney of Miller County, Missouri, and come also the defendants in person and by their

attorney, Leroy Snodgrass, and each defendant waives formal arraignment and enters his plea of not guilty." On April 9, 1965, Witt through his counsel, Snodgrass, moved for a change of venue and on June 2, 1965, venue was changed to Moniteau County and beginning on June 16, 1965, Witt's separate case was tried and throughout the proceedings, including his motion for a new trial, notice of appeal and on his brief in this court he has been represented by Mr. Snodgrass, his paid counsel.

Thus in this background is presented the problem whether the second interrogation of Witt and the introduction in evidence of the incriminating admissions obtained on that occasion by the prosecuting attorney, the sheriff and the patrolman, in the absence of and without notice to his attorney, Mr. Snodgrass, infringed his constitutional rights as a matter of law and therefore demands the granting of a new trial. Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246; Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265; Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; Clewis v. State of Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423. Or to briefly summarize, these facts and circumstances present the problem: Witt had and was represented by counsel when he first appeared in magistrate court to fix a date for his preliminary on September 1, 1964, after that appearance the sheriff of Miller County at the request of the prosecuting attorney removed Witt from his jail cell, took him to the prosecuting attorney's office and there together with a highway patrolman he was further interrogated by all three officials and finally made the admissions involved here—all without notice to his lawyer, Snodgrass. On the motion to suppress Witt said that on that occasion the prosecuting attorney inquired whether he had a lawyer and he replied, "Yes, Leroy Snod-

grass." The highway patrolman, both on the motion to suppress and on the trial, testified that the prosecutor informed Witt that "he had a right to a lawyer" but Witt nevertheless proceeded to repeat what he had previously said in Jefferson City and, furthermore, made other and additional incriminating admissions. While the sheriff said that the prosecuting attorney advised Witt of "his constitutional rights" and only "wanted him to repeat what he had told before about this case," he testified that he did not hear Witt say that he had a lawyer and he did not hear the prosecutor ask him "at any time if he had an attorney." In the trial of the cause in June 1965 as to whether when he took him to the prosecutor's office on September 1, 1964, he knew whether Witt was then represented by a lawyer the sheriff said, "I knew that you (answering Snodgrass) had talked to him, but there has been attorneys into the jail, but I don't know who personally represented him." The prosecuting attorney did not testify at the trial but on the motion to suppress the court inquired whether he desired "to make a statement for the record" and this is his reply: "Yes. For the record in regard to testimony given by the defendant Witt through questioning by Mr. Snodgrass in regard to an interview of the defendant conducted in the prosecuting attorney's office at which the prosecuting attorney, Officer Rohls and Officer or Sheriff Hensley were present. I wish to state at the time of this interview with the defendant, that I had been advised by Mr. Snodgrass, attorney for the defendant Witt, when the defendant was brought before the Magistrate, that he, Mr. Snodgrass, was representing him only at that appearance and that he had not been otherwise retained. That W. F. Berry, who is at this time representing the Defendant Marriott had not appeared in Court on behalf of either the defendants at the time of this examination, and had not been informing the prosecuting attorney that he was representing either party. And that at the time of the interview I had no knowledge that either of the defendants was represented by counsel until I was informed by the Defendant Marriott that he had been advised by counsel not to make a statement and the Defendant Marriott was immediately released and returned to jail."

This case and its record are unlike State v. Turnbough, Mo., 388 S.W.2d 781, in two important respects. First, in this case "constitutional grounds" against the introduction in evidence of Witt's admissions were urged in a separate motion to suppress, kept alive throughout the trial and are fully set forth in his motion for a new trial and constitute the foundation for his assignment of error in this court. Second and most important, upon the principal trial Witt did not himself testify to all the essential facts contained in his admissions. Commonwealth v. McCarthy, 348 Mass. 7, 200 N.E.2d 264; State v. Linder, Mo., 412 S.W.2d 412. Witt did testify, as of course was his right, (RSMo 1959, § 491.010, V.A.M.S.) but the subject matter of his examination in chief was purposefully very narrow, thus restricting the cross-examination. RSMo 1959, §§ 546.260, 491.070, V.A.M.S. In fact he gave no evidence relating to the substantive offense or to any admissions he may have made. The sum total of Witt's testimony was that he was 29 years old, had gone to the fifth grade in a country school, had been an odd jobs farm worker and had never been convicted of a prior offense.

As others have observed, the question involved here is not simply the right to counsel "but with waiver of the assistance and advice of counsel who was at the time representing the defendant." State v. Herman, 3 Ariz.App. 323, 414 P.2d 172, 174. At the time of the second interrogation a warrant had been issued and served, Witt was in jail, and he had been formally charged in magistrate court. Furthermore he or someone for him had employed counsel and defendant and counsel together with the prosecuting attorney had met in magistrate court and agreed upon a future

date, 3 days away, for the preliminary hearing. In Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, decided May 18, 1964, the appellant had been indicted, employed counsel and released on bond. Unknown to Massiah his codefendant had permitted narcotic agents to "bug" his (the codefendant's) automobile. In this manner and in the absence of appellant's counsel the agents listened to and upon his trial testified to the incriminating statements made by him in the course of his conversation with his coindictee. Applying the principles of the Spano case the court concluded that "the petitioner was denied the basic protections of that guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel."

While there is some conflict in the point of view of the three officials, the prosecuting attorney, the sheriff and the patrolman, no one claims that he asked Witt if he wanted his lawyer present or told him that he was entitled to have him present. Only the patrolman claims that Witt was advised on this occasion, not of the right to the presence of his lawyer while being again · interrogated, but of his general right to counsel. Basically the position of the prosecuting attorney and the sheriff was that it was their understanding that Witt only employed counsel for his preliminary hearing and that therefore they had a right to pursue their interrogation. This point of view ignores the fact that Witt did then have counsel, that the preliminary was three days away and they had all appeared in court, according to the transcript, and so of course the prosecuting attorney, if not the sheriff and the patrolman, was bound to know that Witt had a lawyer and that Witt was being interrogated without notice· to the lawyer. Neither the sheriff nor the prosecutor made the slightest effort to communicate with the lawyer even though he lived in Tus-

cumbia and advise him that they were about to conduct another secret out-of-court interrogation of his client.

Witt's Jefferson City admissions have been set forth in their entirety and while they are indeed incriminating, they are lacking in specific detail in several respects and fail to clearly reveal motive and the essentials of second degree murder. And while the state claims that in the Tuscumbia interrogation he was only asked to repeat what he had said in Jefferson City, the second interrogation produced several specific details and illuminated the first interrogation considerably. For example, it was there revealed for the first time that Wilson was probably not dead when Witt and Marriott stuffed him in the septic tank—the patrolman, repeating Witt, said that "He had groaned" as they put him in the tank. In Jefferson City Witt had admitted removing Wilson's clothes but there was then no indication of just why and when this had occurred. It was in the second admissions that Witt said, after hitting Wilson, that he and Marriott loaded him into Witt's automobile and drove around to one or more taverns and had more beer and sandwiches before they placed him in the septic tank. Then too in Tuscumbia to both the sheriff and the patrolman he first said that he did not know or remember what had happened to Wilson's clothes or where they had been removed and discarded. But the sheriff finally testified that Witt had admitted that it was while they were driving around: "I believe he stated that was the time they got rid of the clothes." In and of themselves these isolated details may seem to be rather insignificant, but in the context of the trial the precise time at which Wilson's clothes were removed may become cogently significant. From Witt's Jefferson City admissions there was only an argument and, as he called it, "a fight"—the inference supporting perhaps the fight of sodden drunks. But upon the trial of the cause it developed that just before the three of them left the Hilltop Tavern Wilson produced a twenty

dollar bill from which he bought and paid for not to exceed three beers. The change from the twenty dollar bill, approximately $19.00, was not accounted for upon the trial, it does not appear to have been in his clothes when they were found strewn along the "sawmill road" and so, possibly, a jury could infer from these additional circumstances some motive other than a drunken fight for the beating of Wilson and the removal of his clothes.

This is not to say that mere unlawful questioning in and of itself invalidates all subsequent criminal proceedings, "it was the *use* of Massiah's *incriminating* statements, and the correlative prejudice to the defendant, which required reversal of the conviction thus obtained." United States v. Guerra, 2 Cir., 334 F.2d 138, 145. Since the Spano and Massiah decisions several jurisdictions have applied their principles but peculiarly applicable here is the Arizona case, State v. Herman: "In the instant case, the police officers knew that the defendant was represented by counsel. The defendant had been arrested and defendant's attorney had appeared before the Justice of the Peace to set bond and the date of the preliminary examination. We therefore hold that the statements (and the fruits thereof) obtained from the defendant after arrest and arraignment before the Justice of the Peace and while he was represented by counsel, are inadmissible because said statements were obtained outside the presence of defendant's attorney. To allow interrogation of an accused outside the presence of his attorney is as much a denial of the right of counsel as the refusal to allow an accused to obtain the services of an attorney. Where, as here, the defendant had an attorney of record from the time of the arraignment in the Justice Court, the defendant may not be questioned outside the presence of counsel without counsel's permission." (414 P.2d 1. c. 175–176). Other jurisdictions applying this rule and reversing convictions because of its prejudicial infringement are State v. Gallagher, 97 Ariz. 1, 396 P.2d 241; Commonwealth v. McCarthy, supra; Williams v. State (Fla.App.) 188 So.2d 320, and State v. Longmore, 178 Neb. 509, 134 N.W.2d 66.

Upon this particular record and assignment of error and for the reasons indicated the judgment is reversed and the cause remanded.