Raymond L. TOLIVER, Petitioner,

v.

Donald W. WYRICK, Warden, Respondent.

No. 78–0062–CV–W–1.

United States District Court, W. D. Missouri, W. D.

April 17, 1979.

---

Robert G. Duncan, Kansas City, Mo., for petitioner.

Philip M. Koppe, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION GRANTING APPROPRIATE FEDERAL HABEAS RELIEF

JOHN W. OLIVER, Chief Judge.

### I.

This State prisoner federal habeas corpus case separately presents a Sixth Amendment assistance of counsel question and a *Miranda* question. The State trial court, although afforded three separate opportunities to rule both questions in accordance with controlling federal law, decided both questions adversely to the petitioner. The

Missouri Court of Appeals, Kansas City District, found it necessary on direct appeal to reach only the Sixth Amendment question. That court, after reliably finding the undisputed facts and properly applying controlling principles of federal constitutional law, reversed petitioner's conviction and remanded the case for new trial.[1]

The Supreme Court of Missouri, however, on application of the Attorney General, ordered the case transferred to that court. In a divided opinion, a majority of the Supreme Court of Missouri refused to consider the merits of either of the two federal constitutional questions presented and affirmed petitioner's conviction. *State v. Toliver*, 544 S.W.2d 565 (Mo. banc 1976). Two judges of that court filed separate dissenting opinions based on the *Miranda* ground in which each stated their agreement with the result of the Missouri Court of Appeals decision reversing and remanding the case for a new trial.

For reasons that must be stated in detail, we find and conclude that both the Sixth Amendment question and the *Miranda* question are properly before this Court for determination and that both questions should be decided on their respective merits.[2]

## II.

The Sixth Amendment and *Miranda* questions were created by the failure of an experienced Kansas City police officer to preface his interrogation of the petitioner, who at the time was a defendant represented by counsel in a pending criminal case, either with any of the required *Miranda* warnings or with even a superficial attempt to obtain a waiver of petitioner's Sixth Amendment right to the assistance of counsel. The State prosecutor, with full knowledge of those circumstances, elected to use at trial the oral statements allegedly made to the police officer. The case is here because a majority of the Missouri Supreme Court, after ordering transfer from the Missouri Court of Appeals, refused to consider the merits of either of the federal constitutional questions presented. The following factual circumstances are not in dispute.

Petitioner was convicted in the Circuit Court of Johnson County, Missouri, of stealing guns from a Warrensburg discount store on September 13, 1973. It is undisputed that petitioner was in the store with Richard Lee Stevenson at the time a theft of guns occurred. The majority opinion of the Supreme Court of Missouri reliably found the following facts concerning subsequent events:

> The two men left the store together and drove away in an automobile, which was later stopped by a state trooper who was reacting to a police radio bulletin

1. *State v. Toliver*, No. K.C.D. 27,955 (Mo.App. Dec. 31, 1975). The opinion of the Missouri Court of Appeals, Kansas City District, is attached as an appendix to this memorandum opinion in light of the current Missouri practice which does not permit the publication of the Missouri Court of Appeals' opinion under the procedural circumstances of this case.

2. This Court could decide this case by reaching only the merits of the Sixth Amendment question presented as did the Supreme Court of the United States in *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). We have concluded, however, that it is appropriate that we also reach and decide the merits of the *Miranda* question presented in light of the Attorney General's argument that the petitioner is bound by the State trial court's denial of petitioner's federal claims and the Attorney General's contention that no Missouri appellate court nor any federal court can properly reach and decide the merits of the federal questions presented. That argument, in brief, is based upon the Attorney General's excessively broad reading of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), and, at least implicitly contends that those two cases have somehow overruled all of the principles stated in the 1963 trilogy of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); and *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), and their progeny. The same argument is being presented with increasing frequency in a substantial number of other federal habeas cases which pend in this Court. A full answer to that argument in this case will save judicial time in the other cases which pend on this Court's docket.

concerning the alleged theft. Defendant had been driving about 80 m. p. h. with Stevenson and a man named Garner as passengers. After placing defendant under arrest for speeding and investigation of stealing over $50, the trooper gave defendant his "*Miranda* warnings," although defendant assured the trooper it was unnecessary to do so, because he had done nothing wrong. A search of the car and its occupants produced no handguns. The group was taken to patrol headquarters in Lee's Summit to be held for Warrensburg police, who were investigating the theft. At headquarters, *Miranda* warnings were read again and defendant was questioned about the theft. He denied the theft, saying he entered Wal-Mart to look for camping materials and had left when he could not find what he desired. When later taken to Warrensburg police headquarters, two more questioning episodes ensued preceded by *Miranda* warnings each time, but defendant made no statement. The three men were detained in the Johnson county jail over night . . . . [544 S.W.2d at 567–68].

The next day, petitioner and his companions were released. No formal charges were filed against them until later in the day on September 14, 1973. At that time, and after formal charges had been filed, a warrant was issued for the arrest of Richard Lee Stevenson and petitioner for stealing over $50. Petitioner and Stevenson returned to Warrensburg upon learning of the outstanding warrant and turned themselves in. Both were fingerprinted, photographed, arraigned on the pending charges, and released on bond.

It is stipulated that approximately nine weeks later petitioner and Stevenson were again questioned by police officers. The subsequent interrogation, which is the interrogation involved in this case, was conducted by the "Metro Squad," a group of officers drawn from various police agencies in the Kansas City Metropolitan Area to investigate major crimes. It is further stipulated that the Metro Squad, sometimes referred to as the "Kansas City police" was investigating a homicide at the time of the interviews of Stevenson and petitioner. It is clear from the record that petitioner was questioned by the Kansas City police because they had information that the homicide being investigated "had been committed with a handgun having the same serial number as one of those guns stolen from the [Warrensburg discount] store." 544 S.W.2d at 568.

Stevenson, petitioner's co-defendant in the pending Johnson County case, was questioned after he had been given *Miranda* warnings on November 21, 1973, by Detective Watson and another officer of the Kansas City, Missouri, Police Department. Stevenson's written statement (Ex. D, attached to the stipulation) incriminated himself and petitioner. The next day, on November 22, 1973, in possession of Stevenson's statement and reports from the Warrensburg police department concerning the theft, Detective Watson "was requested by Major Hatfield to go to Raymond's house to see if he would come down and we could interview him." [Tr. 45].

The only State judge to make any findings of fact concerning this questioning was Chief Justice Seiler in his dissenting opinion in the Missouri Supreme Court.[3] In the absence of any relevant findings in the majority opinion of the Supreme Court of Missouri in regard to petitioner's interrogation by the Kansas City police, we have carefully reviewed the State trial proceedings and

---

**3.** The majority opinion of the Supreme Court of Missouri did not make any express finding concerning the State trial judge's conclusory statements that "the interrogation was not a custodial interrogation" and that "the defendant had been adequately warned previously concerning his rights." [Tr. 212]. Chief Justice Seiler viewed the Supreme Court of Missouri's majority opinion as implying that the petitioner had not been subjected to a custodial interrogation.

Justice Bardgett's dissent disagreed with Chief Justice Seiler's view of the implications of the majority opinion, stated the reasons he believed the Supreme Court of Missouri should have reached the merits of the case, and stated his view that the case should have reversed and remanded because "*Miranda* required that the defendant be advised of his rights prior to the police interrogation in the instant case." 544 S.W.2d at 573.

find that the following findings of Chief Justice Seiler are accurate and reliable:

In the case before us, two officers, who knew that the appellant was charged with the theft of a gun which they had in their possession as the murder weapon in a homicide they were investigating, drove to appellant's residence in an unmarked state highway patrol car. According to their own testimony, upon arriving at appellant's residence, they got out of the car went up to the house, pounded repeatedly on the door, "I really whammed it," and yelled for appellant to come out. The officers then placed appellant in the front seat of the car with one of the officers and a companion of appellant [Garner] in the back seat with another officer. The two were driven downtown to police headquarters, separated from one another, and the appellant was questioned for one hour with three officers present. [544 S.W.2d at 570 (Seiler, C. J., dissenting)] [4]

The State concedes that petitioner was not informed of his *Miranda* rights before he was questioned by the Kansas City police on November 22, 1973. The State does not contend, and there is no evidence to support any finding, that petitioner waived his Sixth Amendment right to the assistance of counsel. Detective Watson testified at trial that during the "interview" petitioner orally admitted stealing the guns from the Warrensburg store and selling them to a black man for some dope. [Tr. 202].

We now turn to the factual circumstances in regard to the manner petitioner's federal claims were presented to the State trial judge. Petitioner filed a pretrial motion to suppress the Kansas City police officer's testimony about the incriminating oral statements allegedly made by petitioner on

November 22, 1973. That motion alleged in its first paragraph that "the statement was obtained in violation of defendant's . . right to counsel as guaranteed by the . . Sixth and Fourteenth Amendments to the United States Constitution." [Tr. 17]. The third paragraph of that motion alleged that the "statement was made without counsel present, and without adequate warnings of his rights as set forth by the Supreme Court of the United States of America in *Miranda v. Arizona* [384 U.S. 436] 86 S.Ct. 1602 [16 L.Ed.2d 694]." [Tr. 18]. Immediately prior to trial on December 4, 1974, four police officers testified at a plenary evidentiary hearing on the motion to suppress [Tr. 27–62]. Petitioner did not testify.

At the close of that hearing, the State trial judge denied the motion to suppress with the following conclusory statement:

The Defendant had received the warning four times. Whether this was a custodial or noncustodial interrogation, I don't think there's any question but what he had previously been apprised of what his rights were. I don't think it's necessary that the Police every time they question him, they give him the warnings. The Court certainly feels that the further interrogation and investigation was not a custodial interrogation. [Tr. 62].

After the trial judge ruled the motion to suppress and after other pretrial discussion the trial commenced. The State's last trial witness, Detective Maurice Watson of the Kansas City Police Department, testified late the same afternoon. He testified without additional objection that petitioner had orally admitted the theft to him, statements which petitioner previously and unsuccessfully had moved to suppress. [Tr. 202]. No written statement was offered. Petitioner's counsel cross-examined Detective Wat-

4. Chief Justice Seiler rejected the notion that petitioner had not been taken in custody by stating: "It is true one of the detectives also testified that appellant simply accepted an 'invitation' to go downtown to police headquarters and that he was free to go at any time, although no one informed him of that fact, but this uncommunicated, self-serving, subjective belief on the part of the police does nothing, in my opinion, to lessen the custodial aspects of

defendant's questioning. Appellant was deprived of his freedom in a significant way as contemplated by *Miranda*, and consequently, he has a right to *Miranda* warnings. . . . The same holds true for the police request here to go downtown. It was permeated with the coercive atmosphere presented by the apparent force of law. That required a *Miranda* warning to be given." 544 S.W.2d at 570–71 (Seiler, C. J., dissenting).

son, the State rested, and Court recessed for the evening.

The next morning petitioner's counsel appeared at the Court's chambers before trial was scheduled to resume. He promptly moved to strike Detective Watson's testimony and to instruct the jury to disregard that testimony "for all the reasons assigned in the motion to suppress." [Tr. 211–12]. That motion was denied:

> Well, the motion will be overruled on two bases. Number One, the Court feels that there is a proper foundation for the admission of the statement and that the—
>
> [Brief interruption while Judge answers phone.]
>
> First, that the interrogation was not a custodial interrogation. Secondly, that the defendant had been adequately warned previously concerning his rights in the matter. And secondly [sic], that the objection is untimely. It comes after the testimony has been admitted. [Tr. 212].

Petitioner offered no evidence at trial and was convicted on December 5, 1974. [Tr. 258]. Petitioner's counsel assigned the

denial of the motion to suppress and the admission of the allegedly tainted testimony as error in a post-trial alternative motion to set aside the verdict or for new trial [Tr. 250].[5] On April 1, 1975, petitioner was sentenced to ten years in prison. The proceedings on appeal have been stated above.

### III.

Although the Attorney General recognized that the Missouri Court of Appeals reversed and remanded this case for a new trial on Sixth Amendment grounds, he contends that the theory upon which that court based its reversal "really doesn't carry forward in this proceeding." He further contends that petitioner's reliance in this Court upon the Sixth Amendment right to counsel articulated in *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964),[6] and *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977),[7] "boarders [sic] on the frivoilous [sic]." We disagree.

### A.

The Attorney General's arguments, which include an assertion that reliance on the

**5.** That alternative motion alleged in its third paragraph that "the Court erred in failing to sustain the Motion to Suppress Statement . . . for each and all the reasons and grounds set forth in said motion" [Tr. 251] and, in paragraph nine, alleged that "the Court erred in admitting into evidence the testimony of witness M. Watson pertaining to the statement made by defendant on the 22nd day of November, 1973, while in custody and without having received adequate and proper warnings of his rights as set forth in *Miranda v. Arizona* [384 U.S. 436], 86 S.Ct. 1602 [16 L.Ed.2d 694]." [Tr. 253] That motion was denied by operation of law. [Tr. 257–58].

**6.** In *Massiah*, the defendant "was indicted for violating the federal narcotics law. He retained a lawyer, pleaded not guilty, and was released on bail. While he was free on bail a federal agent succeeded by surreptitious means in listening to incriminating statements made by him. Evidence of these statements was introduced against the petitioner at his trial, and he was convicted. [The] Court reversed the conviction, holding 'that the petitioner was denied the basic protections of that guarantee [the right to counsel] when there was used against him at his trial evidence of his own incriminating words, which federal agents had

deliberately elicited from him after he had been indicted and in the absence of his counsel.'" *Brewer v. Williams*, 430 U.S. 387, 400, 97 S.Ct. 1232, 1240, 51 L.Ed.2d 424 (1976), quoting *Massiah, supra*, 377 U.S. at 206, 84 S.Ct. 1199.

**7.** In *Brewer*, Williams was suspected of abducting a ten year old girl from the Des Moines, Iowa, YMCA. An arrest warrant was issued, and on the advice of counsel Williams surrendered to the police in Davenport, Iowa. There he was arraigned on the criminal charge and advised by two attorneys not to discuss the case with the police officers assigned to transport him back to Des Moines. During the automobile trip to Des Moines, one of the officers "proceeded to elicit incriminating statements from Williams." *Id.*, 430 U.S. at 405, 97 S.Ct. at 1243.

The Court concluded that Williams was entitled to the assistance of counsel when he made his incriminating statements and that the State did not satisfy its burden of demonstrating that Williams knowingly and intelligently waived his Sixth Amendment right. *See generally* Kamisar, *Brewer v. Williams, Massiah, and Miranda: What is Interrogation? When Does It Matter?*, 67 Geo.L.J. 1, 24 (1978).

Sixth Amendment in general, and on *Massiah* in particular, "is presented for the first time" in this Court, ignore the fact that the Missouri Court of Appeals expressly based its reversal of petitioner's conviction on principles articulated in *Massiah* as properly stated and applied by the Supreme Court of Missouri in 1967. The Missouri Court of Appeals concluded that this case was controlled by principles stated by the Supreme Court of Missouri in *State v. Witt*, 422 S.W.2d 304 (Mo.1967).

*Witt* involved the admissibility of a defendant's oral statements made to police officers and a prosecuting attorney after the defendant "had been formally charged in magistrate court." *Id.* at 307. The interrogation took place after the defendant "or someone for him had employed counsel and defendant and counsel together with the prosecuting attorney had met in magistrate court and agreed upon a future date, 3 days away, for preliminary hearing." *Id.* at 307–08. In that case, as in this case, there was no claim, and no evidence to support a claim, that the defendant had waived his Sixth Amendment right to the assistance of counsel. The Supreme Court of Missouri cited and properly applied *Massiah* to the factual circumstances presented and accordingly reversed the judgment of conviction and remanded the case for a new trial.[8]

In its opinion in this case, the Missouri Court of Appeals recognized that "although defendant has failed to properly preserve this claim of error, it is necessary to examine this contention under the Plain Error Rule 27.20(c) since a constitutionally protected right is involved. *State v. Henderson*, 510 S.W.2d 813 (Mo.App.1974)." [9] Court of Appeals Opinion at 610. Thus reaching the merits of the Sixth Amendment question the Missouri Court of Appeals reliably found that "Detective Watson knew the defendant was charged in Johnson County, Missouri [and was on bond]," *id.* at 611, and that "[t]here was no evidence [that] the defendant in any way knowingly and voluntarily waived his right to have his counsel present or notified." *Id.* at 611. It therefore concluded that "[a]bsent any effort on the part of Detective Watson to determine if defendant had counsel, and absent any evidence of any waiver on the part of defendant to have counsel notified or present, the rule in *Witt* will be applied." *Id.* at 611. On the facts, the Missouri Court of Appeals reliably found that the Kansas City police "failed to take either step," properly concluded that "the statement was inadmissible under the holding [of] *Witt*," *id.*, and reversed and remanded the case for a new trial." [10]

---

**8.** Both *State v. Witt* and *Massiah* were cited and properly applied most recently by a Missouri appellate court in *State v. Peters*, 545 S.W.2d 414, 419 (Mo.App.1976), a "jail house bug" case. *Peters* was decided on December 27, 1976, just three days before the Supreme Court of Missouri refused to consider whether principles stated in *Massiah* were applicable to this case.

**9.** *State v. Henderson* recognized that a Missouri appellate court could and should consider the merits on direct appeal of "a claim involving an alleged violation of a federal constitutional right to determine whether it constitutes plain error under Rule 27.20(c)." In *Martin v. Wyrick*, 423 F.Supp. 884, 891 (W.D.Mo.1976), *supplemented* 433 F.Supp. 921 (W.D.Mo.1977), *rev'd on other grounds*, 568 F.2d 583 (8th Cir. 1978), this Court cited *State v. Henderson* with approval and recognized a host of similar Missouri Rule 27.20(c) cases which stem from Judge Hyde's excellent opinion in *State v. Beasley*, 404 S.W.2d 689 (Mo.1966). The Missouri

rule of appellate decision articulated and applied in *Beasley* and by the Missouri Court of Appeals in this case reflects a proper recognition and discharge of the duties imposed on the State courts by the Supremacy Clause of the Constitution.

**10.** The Missouri Court of Appeals also concluded that "the fact the interrogation in this case was prompted by another crime distinct from the offense for which the defendant was subsequently tried" *id.*, did not remove the case from the operation of the federal constitutional standards applied in *Witt*. After that court reliably found and properly concluded that "the two crimes became closely connected when Detective Watson knew a gun taken in the theft with which defendant stood charged had been used in the homicide," it further stated: "[I]t is readily apparent, and was unquestionably clear to Detective Watson at the time, that any interrogation of the defendant would necessarily involve the details of how the defendant was connected with the gun taken in the theft and

It is difficult to understand the nature of the argument the Attorney General attempts to make when he states that the Sixth Amendment question is presented "for the first time" in this Court and that the theory upon which the Court of Appeals decided the case "really doesn't carry forward in this [federal habeas] proceeding." Examination of the Attorney General's response to this Court's order to show cause suggests that the Attorney General may be attempting to make some sort of an exhaustion argument based upon language in *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

■ Assuming the language used by the Attorney General in his brief in this Court is broad enough to include an exhaustion argument, we reject that argument for reasons most recently stated by our Court of Appeals in *Harkins v. Wyrick*, 589 F.2d 387 (8th Cir. 1979), and by this Court in *Martin v. Wyrick*, 423 F.Supp. 884 (W.D.Mo.1976), *supplemented* 433 F.Supp. 921 (W.D.Mo. 1977), *rev'd on other grounds*, 568 F.2d 583 (8th Cir. 1978). Both those cases cite and apply the settled law which makes clear that *Picard v. Connor*—which states in the abstract that "the federal claim must be fairly presented to the state courts"—does not hold that the State court must *decide* the federal question before a federal district court may properly exercise habeas jurisdiction. Rather, the controlling exhaustion principle is whether the petitioner presented the state courts with a full and fair opportunity to decide and apply controlling federal law to the petitioner's federal claims.

■ The trial court papers in this case clearly show that petitioner's motion to suppress was based upon the separate and alternative grounds that (a) petitioner's Sixth Amendment rights had been violated and (b) that petitioner had not been given the required *Miranda* warnings. See paragraphs 1 and 3, respectively, of petitioner's motion to suppress. [Tr. 18]. Defense counsel's cross-examination of Detective Watson in the hearing on the motion to suppress clearly informed the State trial judge that the grounds of petitioner's motion were broader than a routine *Miranda* claim.[11] Petitioner's motion to strike Detective Watson's testimony expressly advised the State trial judge that the motion should have been granted for "all the reasons assigned in the motion to suppress hereinbefore filed in this Court." [Tr. 212]. Petitioner's federal constitutional claims were stated in a like manner in petitioner's alternative motion for new trial. [Tr. 251]. It is therefore apparent that the State trial judge was presented with an opportunity to rule the Sixth Amendment question on three separate occasions and that his attention was directed to that question on other occasions on the day Detective Watson testified at trial.

The fact that the single appellate brief filed on petitioner's behalf—filed in the Missouri Court of Appeals—placed principal reliance on *Miranda* rather than the rationale of *Massiah* is neither material nor controlling. The material fact is that the Missouri Court of Appeals did consider and decide the Sixth Amendment question presented to and decided by the State trial

used in the homicide. Thus, Detective Watson knew any interview with the defendant would cover any and all connection the defendant had with the gun from the beginning of his connection to the end. This necessarily involved the crime for which defendant was later tried, and eliminated any distinction between this case and the *Witt* case based on any difference between the crime for which the defendant was tried and the subject crime on which interrogation took place." *Id.*

11. Early in that cross-examination defense counsel elicited admissions from Detective Watson that at the time that Detective Watson

"went after Mr. Toliver" in November, 1973, he knew that "Mr. Toliver was charged with a theft of guns in Warrensburg, Missouri" in September, 1973, and that "the gun in your possession, that had been used in this homicide, had the same serial number as one of the guns taken from the theft in Warrensburg." [Tr. 52]. Defense counsel also developed that although Detective Watson in fact knew that "there was a charge pending against petitioner in Warrensburg, he did not ask Mr. Toliver if he was represented by an attorney in Warrensburg." [Tr. 54].

judge. What may have prompted the Missouri Court of Appeals to consider that question is quite immaterial because it is clear in this case, as it was clear in *Harkins v. Wyrick*, that petitioner's trial papers "squarely presented" the State trial court with the Sixth Amendment question. Thus petitioner "provided the State courts with ample opportunity to review the application [of the Sixth Amendment] to the facts of his case." 589 F.2d at 390–91 (footnote omitted). In addition, the State court record shows that the Attorney General argued the merits of the Sixth Amendment question in both his alternative motion for rehearing or for transfer filed in the Court of Appeals and in his application for transfer and his later brief on the merits filed in the Supreme Court of Missouri.[12]

Therefore, it is clear that the *Massiah* question was fairly and adequately presented for decision on the merits in the State trial court, the Missouri Court of Appeals and the Supreme Court of Missouri. The Supreme Court of Missouri had a full and fair opportunity to decide whether the admission of petitioner's statements violated his Sixth Amendment rights, and accordingly we find and conclude that this issue is exhausted.

Finally, we are convinced that an independent and alternative principle of exhaustion should be recognized and applied in this case. In *Rice v. Wolff*, 513 F.2d

1280, 1290 (8th Cir. 1975), *rev'd on other grounds sub nom. Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), Judge Matthes concluded that "to send the petitioner back to the state courts over two years after the filing of his federal habeas motion, to assert a question which the State Supreme Court previously had before it is manifestly unreasonable and we do not believe that law requires such a result."[13]

█ We are satisfied that the circumstances of this case, particularly as they relate to the inadequate manner in which petitioner was represented on appeal, reflect the sort of exceptional case in which federal habeas jurisdiction should be exercised even though it could be argued that petitioner may not have fully exhausted available State court remedies. We find and conclude for this separate and alternative reason that we are required to reach the merits of the Sixth Amendment question presented.

### B.

*Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), decided after both the Missouri Court of Appeals and the Supreme Court of Missouri considered this case, confirms the validity of the Missouri Court of Appeals' application of *Massiah* principles to this case.[14] In *Brewer v. Wil-*

---

12. The fact that petitioner's counsel did not file any brief on petitioner's behalf in the Supreme Court of Missouri is not material. While it is clear that such a brief should have been filed, it is equally clear that the Supreme Court of Missouri could have ordered petitioner's counsel to discharge his duty to his client and to provide the Supreme Court of Missouri with a brief directed to the arguments advanced by the Attorney General in his application for transfer and in his brief on the merits in that court.

This is not the first case in which a failure of the Supreme Court of Missouri to insist that a defendant in a criminal case be afforded the effective assistance of counsel on appeal has required an excessive expenditure of additional judicial resources. *See Gray v. Swenson*, 302 F.Supp. 1162 (W.D.Mo.1969). We are satisfied that if petitioner's counsel had filed appropriate briefs on petitioner's behalf in the Supreme Court of Missouri it would have decided the case in the same manner and would have

reached the same result as did the Missouri Court of Appeals.

13. *See also Green v. Wyrick*, 414 F.Supp. 343, 349 (W.D.Mo.1976), where Judge Hunter concluded that "[t]he exhaustion requirement of 28 U.S.C.A. § 2254 is not . . . an inflexible requirement for it is a rule of comity and not a rule limiting the power of a federal court to [grant] relief" and that there are particular cases in which a federal district court should reach and decide the merits of a federal constitutional question even though a petitioner has not in fact exhausted available State court remedies. *See also Francisco v. Gathright*, 419 U.S. 59, 95 S.Ct. 257, 42 L.Ed.2d 226 (1974); *Austin v. Swenson*, 522 F.2d 168 (8th Cir. 1975); *Losieau v. Sigler*, 421 F.2d 825, 828 (8th Cir. 1970).

14. The Supreme Court's sole reliance in *Brewer v. Williams* on *Massiah* to affirm a grant of

*liams,* the District Court based its grant of federal habeas relief on three alternative and independent grounds. The Court of Appeals affirmed on two of those grounds.

The Supreme Court, however, concluded that it needed to consider only the petitioner's Sixth Amendment claim. "For it is clear," said the Court, "that the judgment before us must in any event be affirmed upon the ground that Williams was deprived of a . . . constitutional right—the right to the assistance of counsel." 430 U.S. at 397–98, 97 S.Ct. at 1239. The Court stated:

> Whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him— "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois, supra,* [406 U.S. 682] at 689 [92 S.Ct. 1877, 1882, 32 L.Ed.2d 411] [430 U.S. at 398, 97 S.Ct. at 1239].

On the facts the Supreme Court stated that "[t]here can be no doubt in the present case that judicial proceedings had been initiated against Williams [because a] warrant had been issued for his arrest, he had been arraigned on that warrant before a judge in a Davenport courtroom, and he had been committed by the court to confinement in jail." *Id.* at 399, 97 S.Ct. at 1239. The Court then concluded that "[t]he circumstances of this case are thus constitutionally indistinguishable from those presented in *Massiah v. United States, supra.*" *Id.* at 400, 97 S.Ct. at 1240. It added:

> That the incriminating statements were elicited surreptitiously in the *Massiah* case, and otherwise here, is constitutionally irrelevant. See *ibid.; McLeod v. Ohio,* 381 U.S. 356 [85 S.Ct. 1556, 14 L.Ed.2d 682;] *United States v. Crisp,* 435

F.2d 354, 358 (C.A.7); *United States ex rel. O'Connor v. New Jersey,* 405 F.2d 632, 636 (C.A.3); *Hancock v. White,* 378 F.2d 479 (C.A.1). Rather, the clear rule of *Massiah* is that once adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him. [430 U.S. 400–01, 97 S.Ct. at 1240].

The Supreme Court then agreed with the conclusion of the District Court and the Court of Appeals "that the Iowa courts had 'applied wrong constitutional standards' in ruling that Williams had waived the protections that were his under the Constitution" 430 U.S. at 402, 97 S.Ct. at 1241. It then concluded that:

> The District Court and the Court of Appeals were also correct in their understanding of the proper standard to be applied in determining the question of waiver as a matter of federal constitutional law—that it was incumbent upon the State to prove "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. [458] at 464, [58 S.Ct. 1019, 1023, 82 L.Ed. 1461]. That standard has been reiterated in many cases. We have said that the right to counsel does not depend upon a request by the defendant, *Carnley v. Cochran,* 369 U.S. 506, 513 [82 S.Ct. 884, 888, 8 L.Ed.2d 70;] cf. *Miranda v. Arizona,* 384 U.S. at 471, [86 S.Ct. 1602, 1626, 16 L.Ed.2d 694,] and that courts indulge in every reasonable presumption against waiver, e. g., *Brookhart v. Janis, supra,* [384 U.S. 1] at 4 [86 S.Ct. 1245, 1246, 16 L.Ed.2d 314]; *Glasser v. United States,* 315 U.S. 60, 70 [62 S.Ct. 457, 464, 86 L.Ed. 680.] This strict standard applies equally to an alleged waiver of the right to counsel whether at trial or at a critical stage of pretrial proceedings. *Schneckloth v. Bustamonte,* 412 U.S. 218, 238–240 [93 S.Ct. 2041, 2053–2054, 36

federal habeas relief may confirm Mr. Justice White's 1967 forecast of the significance of *Massiah. See Massiah v. United States,* 377 U.S. 201, 208, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (White, J., dissenting). Professor Yale Kamisar, in *Brewer v. Williams, Massiah, and*

*Miranda: What is Interrogation? When Does It Matter?,* 67 Geo.L.J. 1, 24 (1978) noted, we believe correctly, that until *Brewer v. Williams* was decided in 1977, "lasting fame had eluded *Massiah v. United States.*"

594

L.Ed.2d 854;] *United States v. Wade*, 388 U.S. [218] at 237 [87 S.Ct. 1926, 1937, 18 L.Ed.2d 1149]. [430 U.S. at 404, 97 S.Ct. at 1242].

The Court ruled that "the Court of Appeals was correct in holding that, judged by those standards, the record in this case falls far short of sustaining petitioner's burden," *id.* and, after an analysis of the facts, added that "[t]he circumstances of record in this case thus provide no reasonable basis for finding that Williams waived his right to the assistance of counsel." *Id.* at 405, 97 S.Ct. at 1243.

However, the Court confirmed:

The Court of Appeals did not hold, nor do we, that under the circumstances of this case Williams *could not*, without notice to counsel, have waived his rights under the Sixth and Fourteenth Amendments. It only held, as do we, that he did not. [430 U.S. at 405–06, 97 S.Ct. at 1243 (emphasis in original)].[15]

■■■ It is thus clear *Brewer v. Williams* reaffirmed and revitalized *Massiah* and that the Missouri Court of Appeals was therefore correct in applying *State v. Witt*, a direct progeny of *Massiah*, when it concluded that petitioner's Sixth Amendment

rights were violated. Under the undisputed factual circumstances of this case petitioner, who had been charged, arrested, and released on bond on the Warrensburg charge, had a Sixth Amendment right to assistance of counsel at the time of his interrogation by the Kansas City police. Under *Massiah* and *Brewer v. Williams*, petitioner's Sixth Amendment rights had attached before his interrogation and his inculpatory statements were inadmissible unless the State satisfied its "heavy burden" of demonstrating that the petitioner waived that right. In this case the State does not even claim, and there is no evidence whatsoever in the record to demonstrate that the petitioner waived his Sixth Amendment rights.[16]

It is apparent that petitioner is entitled to federal relief unless the arguments presented by the Attorney General to the Supreme Court of Missouri on the merits of the Sixth Amendment question have some validity. We find and conclude that they do not.

### C.

The Attorney General summarized the four arguments presented to the Supreme

---

**15.** The concurring and dissenting opinions in *Brewer v. Williams* do not reflect any substantial quarrel with the majority opinion's statement of the applicable Sixth Amendment standards or the applicable *Johnson v. Zerbst* standard of waiver. Careful study of all the opinions in *Brewer v. Williams* clearly supports the following observation made by Mr. Justice Powell in the opening paragraphs of his concurring opinion:

"As the dissenting opinion of the Chief Justice sharply illustrates, *resolution of the issues in this case turns primarily on one's perception of the facts.* There is little difference of opinion, among the several courts and numerous judges who have reviewed the case, as to the relevant constitutional principles: . . . . *The critical factual issue is whether there had been a voluntary waiver* . . . ." [430 U.S. at 409, 97 S.Ct. at 1245 (Powell, J., concurring) (emphasis added)].

Mr. Justice White's dissent, in which Justices Blackmun and Rehnquist joined, stated explicitly that "[t]he majority creates no new rule preventing an accused who has retained a lawyer from waiving his right to the lawyer's presence during questioning. The majority simply

finds that no waiver was *proved* in this case. I disagree." *Id.* at 387, 97 S.Ct. at 1257 (White, J., dissenting) (emphasis in original.) Mr. Justice White reiterated that "the issue is, as the majority recognizes, one of the proof necessary to establish waiver." *Id.* at 436 n.5, 97 S.Ct. at 1258 n.5.

**16.** Because the State did not even attempt to carry the burden of proof imposed on it by applicable federal standards, it is not necessary for this Court to reach the substantial question of whether *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and other Sixth Amendment cases impose higher standards and require a greater quantum of proof for a valid Sixth Amendment waiver than that required under *Miranda*. *See United States v. Satterfield*, 558 F.2d 655 (2nd Cir. 1977), aff'g 417 F.Supp. 293, 333 (S.D.N.Y.1976), in which the Second Circuit answered that question in the affirmative. *See also United States v. Massimo*, 432 F.2d 324, 327 (2nd Cir. 1970) (Friendly, J., dissenting), *cert. denied*, 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 633 (1971) which may now reflect the rule of decision of the Second Circuit.

Court of Missouri on the merits of the Sixth Amendment question by stating that in this case [1] "the questioning was in a non-custodial setting; [2] the appellant voluntarily answered questions; [3] was not questioned concerning the crime for which he had been arrested and charged by another prosecutor; and [4] there was no evidence that the Kansas City Police were aware that [counsel] had been appointed for the theft charge in Warrensburg." See the Attorney General's brief in the Supreme Court of Missouri, p. 13.

■ The Attorney General's first argument is that petitioner's right to counsel was not violated because the interrogation was "non-custodial." We disagree. *Massiah* itself establishes that whether the accused is in custody at the time of questioning is constitutionally irrelevant.

■ The second argument, based on the factual assumption that the petitioner "voluntarily answered" questions—and therefore made a knowing and intelligent waiver of his right to counsel—fails as a matter of proof. As we have noted already, the record in this case is barren of any effort to prove that the defendant waived his Sixth Amendment rights and voluntarily answered the questions. The factual circumstances in this regard are comparable to those involved in *Brewer v. Williams.*

■ The Attorney General's third argument—that the petitioner "was not questioned concerning the crime for which he had been arrested and charged"—was considered and properly rejected in accordance with applicable controlling federal standards by the Missouri Court of Appeals. It is obvious that petitioner was being interrogated about a related offense. Indeed, the Attorney General admitted in his applica-

tion to transfer the case to the Supreme Court of Missouri that the petitioner had been "formally charged with a *related* offense." (Emphasis added). The Missouri Court of Appeals appropriately stated that "it is obvious that the sole reason for the interview with the defendant was because of his alleged connection with the theft of a gun which had been used in a homicide." [17] Court of Appeals Opinion at 611.

The Missouri Court of Appeals rejected the argument that the principles of *Massiah* should not be applied because the interrogation was prompted "by another crime distinct from the offense for which the defendant was subsequently tried." *Id.* The Missouri Court of Appeals properly concluded that:

It is readily apparent, and was unquestionably clear to Detective Watson at the time, that any interrogation of the defendant would necessarily involve the details of how the defendant was connected with the gun taken in the theft and used in the homicide. Thus, Detective Watson knew any interview with the defendant would cover any and all connection the defendant had with the gun from the beginning of his connection to the end. This necessarily involved the crime for which defendant was later tried, and eliminated any distinction between this case and the *Witt* case based on any difference between the crime for which the defendant was tried and the subject crime on which interrogation took place. [*Id.*]

That conclusion reflected a proper application of controlling federal constitutional principles. *See United States v. Diggs,* 497 F.2d 391 (2nd Cir. 1974), *cert. denied,* 419 U.S. 861, 95 S.Ct. 112, 42 L.Ed.2d 96 (1974).[18]

---

17. Similarly, the majority opinion of the Supreme Court of Missouri found that the Kansas City police "inquiry of defendant was for the purpose of finding and identifying the killer by tracing this gun from defendant to the killer." 544 S.W.2d at 568.

18. *United States v. Dority,* 487 F.2d 846, 848 (6th Cir. 1973) (involving "wholly unrelated charges") and *United States v. Van Dusen,* 431

F.2d 1278, 1279, 1281 (1st Cir. 1970), (involving "an unrelated State criminal charge") are obviously distinguishable on their facts. *United States v. Diggs, supra,* and this case, both involving related crimes on their facts, illustrate the distinction between interrogation conducted with regard to wholly unrelated charges and interrogation conducted in connection with a closely related charge.

■ The Attorney General's final argument, that "there was no evidence that the Kansas City Police were aware that petitioner had appointed counsel for the theft charge in Warrensburg," is equally invalid. Knowledge of whether an accused has counsel after his constitutional right to assistance of counsel has attached is constitutionally irrelevant. *Massiah* and *Brewer* make clear that the Sixth Amendment question does not turn on whether the police officer knew the accused was represented by counsel, but rather on whether the accused's constitutional right to the assistance of counsel had attached by reason of the stage of the criminal proceedings against him. 430 U.S. at 398, 97 S.Ct. 1232. We therefore conclude that none of the arguments presented by the Attorney General have any validity under the undisputed circumstances of this case.[19]

Finally because *Brewer v. Williams* cites *State ex rel O'Connor v. State of New Jersey*, 405 F.2d 632, 637 (3rd Cir. 1969), with approval, 430 U.S. at 401, 97 S.Ct. 1232, and because that case concluded that it was appropriate to make a *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), inquiry under the circumstances, we also reach the question of whether the erroneous admission of petitioner's oral statements was harmless error.

■ After our careful review of the complete trial transcript, including examination of all the evidence adduced and the arguments made by counsel to the jury we find and conclude that Detective Watson's testimony relating the petitioner's oral statement may have been the most critical factor in the jury's finding of guilt. Where that possibility exists, the constitutional error in admitting that statement in evidence cannot be characterized as "harmless beyond a reasonable doubt" within the mean-

ing of *Chapman v. California*. *See also* 544 S.W.2d at 571–72 (Seiler, C. J., dissenting); Court of Appeals Opinion at 612.

For all the reasons stated, we find and conclude that petitioner is entitled to appropriate federal habeas corpus relief on the separate and independent ground that his Sixth Amendment right to the assistance of counsel was violated. We now turn to the other questions presented in this case.

## IV.

### A.

The first point relied upon by the Attorney General in his brief in this Court is that the *Miranda* question "is not cognizable in this proceeding, because the petitioner's failure to make a contemporaneous objection to the statement at the time it was introduced into evidence . . . constituted a 'procedural default' which precludes habeas corpus review." The State argues that the Supreme Court held in *Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 94 (1976), that "such a procedural default amounts to an adequate, independent state ground which prevents federal review in a habeas corpus proceeding." We disagree.

■ The State's sweeping interpretation of what the Court actually held in *Wainwright* is much too broad. The most that can be said of *Wainwright* is that the Court held that a total failure to comply with a contemporaneous objection rule which serves a legitimate state interest may be an adequate and independent state ground precluding review in the Supreme Court of the United States and therefore be said to bar federal habeas review. The factual and procedural circumstances of *Wainwright*

19. In all of the briefs filed by the Attorney General in this and both appellate courts of Missouri attention was directed to Detective Watson's testimony that the petitioner was familiar with the Kansas City Police headquarters and that he had been there approximately fifty or sixty times. The majority opinion of the Supreme Court of Missouri, for reasons which were not articulated, commented that the petitioner was "well known" to the Kansas City Police Department. 454 S.W.2d at 568. That circumstance is no more constitutionally relevant to the determination of this case than the fact that the defendant is a black man and that he probably served as an informer for the Kansas City Police Department. [*See* Tr. 226 and page 146 of Exh. G attached to the Stipulation].

were entirely different from those presented in this case. In addition, *Wainwright* recognized and reaffirmed a longstanding constitutional principle that overly technical state procedural rules can not bar review of constitutional rights in the Supreme Court of the United States. We find and conclude that the Missouri rule of appellate procedure which petitioner's counsel was found to have violated is not an adequate and independent state ground which bars federal habeas review under *Wainwright's* rationale.

In *Wainwright*, the petitioner, after trial and direct appeal proceedings had been completed, challenged for the first time in a post-conviction motion to vacate sentence the admissibility of incriminating statements which had been admitted at his trial. He contended that the statements were inadmissible because he had been intoxicated when the *Miranda* warnings were read to him and that under those circumstances he could not knowingly have waived his rights under the standards of *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). The Florida courts refused to consider the question presented in the motion to vacate sentence or in a subsequent state petition for habeas corpus because at no time during the trial was the admissibility of any of the defendant's statements challenged by his counsel on the ground later and for the first time stated in the post-conviction proceedings and because the question was not presented as required by Fla. Rule Crim. Pro. 3.190(i).[20]

The Court concluded "that Florida procedure did, consistently with the United States Constitution, require that respondent's confession be challenged *at trial* or not at all, and thus his failure to timely object to its admission amounted to an independent and adequate state procedural ground which would have prevented direct review here. See *Henry v. Mississippi,* 379 U.S. 443, [85 S.Ct. 564, 13 L.Ed.2d 408] (1965)." 433 U.S. at 86–87, 97 S.Ct. at 2506

(emphasis added). The Court stated in detail the purposes served by a contemporaneous objection rule designed to protect legitimate state interests by directing the state trial judge's attention to a defendant's federal claim so that the judge could make at trial "the factual determinations necessary for properly deciding the federal constitutional question," rather than having those questions decided "years later in a federal habeas proceeding." *Id.* at 88, 97 S.Ct. at 2507.

Having concluded that Sykes' failure to raise his constitutional claims at the time of trial amounted to an independent and adequate state ground which would have prevented direct review by the Supreme Court in an appeal from the highest appellate court of a State, the Court proceeded to the question of whether the rule of *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), barring federal habeas corpus review absent a showing of "cause" and "prejudice," should be applied in a case in which no objection based on federal constitutional grounds had been made at or during the state court trial. *Id.* 433 U.S. at 87, 97 S.Ct. 2497. The Court answered that question in the affirmative and proceeded to find neither "cause" nor "prejudice" under the circumstances presented in *Wainwright.*

The rationale of *Wainwright* generally, and the Supreme Court's approving citation of *Henry v. Mississippi* in particular, require that this Court must determine whether the finding of the Supreme Court of Missouri,— that petitioner's counsel "failed to keep alive and preserve for appellate review the [*Miranda*] question raised by his motion to suppress," [544 S.W.2d at 568]—is an independent and adequate state ground that would bar review in the Supreme Court of the United States and thus preclude federal habeas review. The Attorney General's argument assumes without discussion that a violation of Missouri's rule of appellate procedure applied in this case is an indepen-

---

**20.** The Florida rule literally states only that a motion to suppress must be filed before trial. The Supreme Court, however, accepted a line of Florida authorities interpreting the rule as requiring a "contemporaneous objection" at trial. *Id.* at 85–86, 97 S.Ct. 2497.

dent and adequate state ground which would bar Supreme Court review on direct appeal. We find and conclude that a violation of Missouri's rule of appellate procedure would not constitute an independent and adequate state ground barring direct review in the Supreme Court and therefore does not bar federal habeas review under the new rationale of *Wainwright.*

*Wainwright* did not change or challenge the long established principle that "the adequacy of state procedural bars to the assertion of federal questions is itself a federal question." *Douglas v. Alabama,* 380 U.S. 415, 422, 85 S.Ct. 1074, 1078, 13 L.Ed.2d 934 (1965). *See, e. g., Henry v. Mississippi,* 379 U.S. 443, 447, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); *Staub v. City of Baxley,* 355 U.S. 313, 318, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); *Davis v. Wechsler,* 263 U.S. 22, 24, 44 S.Ct. 13, 68 L.Ed. 143 (1923); *Carter v. Texas,* 177 U.S. 442, 447, 20 S.Ct. 687, 44 L.Ed. 839 (1900). *Henry v. Mississippi* [21] defines the inquiry a federal court must make in determining whether a state's procedural grounds may bar federal review:

> These cases settle the proposition that a litigant's procedural defaults in state proceedings do not prevent vindication of his federal rights unless the State's insistence on compliance with its procedural rule serves a legitimate state interest. In every case we must inquire whether the enforcement of a procedural forfeiture

serves such a state interest. If it does not, the state procedural rule ought not be permitted to bar vindication of important federal rights. [379 U.S. 447–48, 85 S.Ct. at 567].

*See also id.* at 448 n.3; 85 S.Ct. 564 n.3; *Michigan v. Tyler,* 436 U.S. 499, 512 n.7, 98 S.Ct. 1942, n.7, 56 L.Ed.2d 486 n.7 (1978); *Camp v. Arkansas,* 404 U.S. 69, 92 S.Ct. 307, 30 L.Ed.2d 223 (1971) (per curiam), *rev'g and remanding* 249 Ark. 1075, 467 S.W.2d 707 (1971).

*Henry v. Mississippi* also teaches that a state procedural rule which requires that a contemporaneous objection be made at and during a defendant's state criminal trial in order that the state trial judge be in a position to prevent or correct trial error [22] "clearly does serve a legitimate state interest. By immediately apprising the trial judge of the objection, counsel gives the court the opportunity to conduct the trial without using the tainted evidence. If the objection is well taken the fruits of the illegal search may be excluded from jury consideration, and a reversal and new trial avoided." 379 U.S. at 448, 85 S.Ct. at 567–8.

Despite the general legitimacy of the Florida type of contemporaneous objection rule considered in *Wainwright,*[23] the Court in *Henry* stated that a state finding that such a state rule had been violated would not constitute an independent and adequate

---

**21.** In *Henry,* the Mississippi Supreme Court found that certain testimony which had been introduced against petitioner at trial had been improperly admitted because it was the fruit of an unlawful search. However, the Mississippi Supreme Court affirmed petitioner's conviction because his counsel did not object to the introduction of the evidence when the State offered the testimony.

**22.** The Attorney General's brief continually labels Missouri's rule of appellate decision a "contemporaneous objection" rule, apparently in an effort to justify his expansive reading of *Wainwright.* The Florida "contemporaneous objection rule" considered in *Wainwright* required only that a defendant's federal claim be raised at trial to focus the state trial judge's attention on the constitutional issue. Indeed, the Supreme Court in *Wainwright* referred to the Florida rule as a rule requiring that the defendant's "confession be challenged at trial

or not at all." 433 U.S. at 86–87, 97 S.Ct. at 2506.

It should be obvious that a state rule of appellate decision which requires multiple objections at trial to direct the state trial judge's attention to a federal claim repeatedly is an entirely different procedural rule than the Florida rule considered in *Wainwright.*

**23.** *Wainwright* noted that state contemporaneous objection rules "[were] by no means peculiar to Florida." 433 U.S. at 88, 97 S.Ct. at 2507. Nothing said in any of the opinions written in *Wainwright,* however, would suggest that any member of the Court would accept as an independent and adequate state ground a rule of state procedure which would require that a state trial judge's attention be fully and fairly directed to the defendant's federal claim more than once.

state ground barring direct review in the Supreme Court of the United States when the purpose of the rule—to permit appropriate consideration of the federal constitutional issue by the state trial judge—was substantially served by some other trial development accomplishing the same purpose. The Court stressed:

> [O]n the record before us it appears that this purpose of the contemporaneous-objection rule may have been substantially served by petitioner's motion at the close of the State's evidence asking for a directed verdict because of the erroneous admission of the officer's testimony. For at this stage the trial judge could have called for elaboration of the search and seizure argument and, if persuaded, could have stricken the tainted testimony or have taken other appropriate corrective action. . . . In these circumstances, the delay until the close of the State's case in presenting the objection cannot be said to have frustrated the State's interest in avoiding delay and waste of time in the disposition of the case. If this is so, and enforcement of the rule here would serve no substantial state interest, then settled principles would preclude treating the state ground as adequate; giving effect to the contemporaneous-objection rule for its own sake "would be to force resort to an arid ritual of meaningless form." *Staub v. City of Baxley,* 355 U.S. 313, 320, 78 S.Ct. 277, 281, 2 L.Ed.2d 302); see also *Wright v. Georgia,* 373 U.S. 284, 289–291, 83 S.Ct. 1240, 10 L.Ed.2d 349. [*Id.,* 379 U.S. at 448–49, 85 S.Ct. 564, 568 (footnote omitted)].[24]

*Henry* therefore makes clear that not every "procedural default" resulting from a state court's finding of a violation of some state procedural rule can properly be considered as an independent and adequate state ground precluding Supreme Court review and thus be viewed as a bar to federal habeas review. Indeed, the Court in *Henry* concluded that the purpose of a valid contemporaneous objection rule would be substantially served by any procedure which focused the attention of the state trial judge on a federal constitutional claim and which afforded that judge an appropriate opportunity to rule the federal question in a manner consistent with applicable federal law. A refusal of a state appellate court to reach the merits of a defendant's federal claim fairly presented to the state trial court at the time of trial on the ground that the defendant's counsel was in "procedural default" of a state rule of appellate decision which requires multiple objections to be made at trial simply is not an independent and adequate state ground which would preclude review in the Supreme Court. *Wainwright* did not overrule the long line of cases illustrated by *Douglas v. Alabama,* 380 U.S. 415, 422, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

In *Douglas,* the Alabama Court of Appeals refused to consider petitioner's constitutional claim because of his counsel's failure to make a "sufficient" objection.[25] The

---

**24.** The Court in *Henry* did not reach the merits of the constitutional issue. It remanded the case to the Mississippi courts for a hearing on the question of whether petitioner's counsel had deliberately by-passed the opportunity to raise the constitutional question at trial. 379 U.S at 449–53, 85 S.Ct. 564. The trial court found that there had been deliberate bypass, and this conclusion was affirmed on appeal, 198 So.2d 213 (Miss.1967), *cert. denied,* 392 U.S. 931, 88 S.Ct. 2276, 20 L.Ed.2d 1389 (1968). In denying certiorari, the Supreme Court noted that petitioner was free to raise his claim in federal habeas corpus.

**25.** On occasion, the Supreme Court of Missouri has infrequently adopted a similar method of refusing to reach the merits of a federal consti-

tutional claim raised and decided by a state trial judge. *See State v. Price,* 422 S.W.2d 286 (Mo.1967); *State v. Devoe,* 430 S.W.2d 164, 168 (Mo.1968). More frequently, however, the Supreme Court of Missouri has rejected the Attorney General's argument that defense counsel's trial objections had not been sufficiently definite to focus the state trial judge's attention to the defendant's federal claim. *See, e. g., State v. Rapp,* 412 S.W.2d 120 (Mo.1967), which properly applied principles stated in *State v. Beasley,* 404 S.W.2d 689 (Mo.1966). *Beasley* held that a Missouri appellate court should apply the plain error Rule 27.20(c) to reach the merits of a federal claim ruled adversely to the defendant by the state trial judge, even though the question may not have

Supreme Court pointed out that defense counsel at trial had made multiple objections at trial, had moved to exclude the evidence, and had included the claimed error in defendant's motion for new trial. The Court found that under those circumstances the Alabama Court of Appeals' finding that the federal claim had not been preserved for state appellate review was not an independent and adequate state ground barring Supreme Court review:

[A]n objection which is ample and timely to bring the alleged federal error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to serve legitimate state interests, and therefore sufficient to preserve the claim for review here. . . . On these facts, it is clear that the defense brought the objection to the attention of the court at several points, at any of which corrective action could have been taken by stopping the questioning, excusing the jury, or excluding the evidence. To the extent that the Alabama rule requires objection after each and every question in this prolonged series, it is plainly inadequate to bar our review of the federal question presented. [*Id.* at 422–23, 85 S.Ct. at 1078–1079 (citations omitted).]

In this case petitioner's counsel made the State trial judge aware of his constitutional objection in a motion to suppress filed two days prior to trial. On the very day of trial the state trial judge conducted an evidentiary hearing on the motion to suppress. After the hearing the state trial judge denied the motion to suppress and the case proceeded to trial. It is true, of course,

that the police officer was permitted to testify to the incriminating oral statements the same day without further objection and that defendant's counsel cross-examined the police officer before the case was recessed for the day. However, promptly the next morning before further proceedings with the jury petitioner's counsel moved to strike Detective Watson's testimony and requested that the state trial judge instruct the jury to disregard that testimony for the reasons stated in the motion to suppress. The state trial judge was afforded a final trial opportunity to rule petitioner's federal claim in accordance with applicable federal law when the question was presented in petitioner's alternative motion for a new trial.

The Missouri Supreme Court refused to review the merits of petitioner's constitutional claim, holding that the petitioner "failed to keep alive and preserve for appellate review the question raised by his motion to suppress. *State v. Yowell,* 513 S.W.2d 397, 402–3 (Mo. banc 1974),"[26] 544 S.W.2d at 568.

It is obvious that the trial court was made aware of the petitioner's federal claim before the trial commenced and that the question was again brought into precise focus a number of times during the trial. It is clear that the state trial judge was afforded ample opportunity to make proper rulings and to take appropriate action in regard to petitioner's federal claim consistent with applicable federal standards. Thus the legitimate state interests which could have been served by a state trial or appellate rule of procedure requiring a con-

been properly preserved for state appellate review. This Court had occasion to discuss *Beasley*, and its progeny in *Martin v. Wyrick*, 423 F.Supp. 884, 887–92 (W.D.Mo.1976), *supplemented* 433 F.Supp. 921 (W.D.Mo.1977), *rev'd on other grounds*, 568 F.2d 583 (8th Cir. 1978). In *Martin* this Court applied the same *Henry v. Mississippi* principles that we apply in this case. The practical consequences of a Missouri appellate court's refusal to apply Missouri Rule 27.20(c) in accordance with the principles enunciated in *Beasley* are stated fully in *Martin*.

**26.** In *State v. Yowell*, the Missouri Supreme Court ruled that in order to preserve a claim of erroneously introduced evidence for appeal a defendant must move to suppress the evidence, must object in a timely fashion, and must again raise the issue in his motion for a new trial. This Court in *Yowell v. Wyrick*, 387 F.Supp. 421 (W.D.Mo.1975), was required by *Henry v. Mississippi* to reach the merits of the federal question which the Supreme Court of Missouri had avoided. In *Yowell*, as in this case, we concluded that the Missouri Court of Appeals had properly applied controlling federal law and accordingly granted federal habeas relief.

temporaneous trial objection were fully served under the circumstances of this case.[27]

We find and conclude that the Supreme Court of Missouri's enforcement of Missouri's rule of appellate decision in this case served no legitimate state interest and thus does not constitute an independent and adequate state ground precluding federal habeas review within the rationale of *Wainwright*.

Under these circumstances, to give effect to the state procedural rule "for its own sake 'would be to force resort to an arid ritual of meaningless form.'" *Henry v. Mississippi*, 379 U.S. at 449, 85 S.Ct. at 568, *quoting Staub v. City of Baxley*, 355 U.S. 313, 320, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958). *See also NAACP v. Alabama*, 377 U.S. 288, 297, 84 S.Ct. 1302, 1308, 12 L.Ed.2d 325 (1964). ("The consideration of asserted constitutional rights may not be thwarted by simple recitation that there has not been observance of a procedural rule with which there has been compliance in both substance and form, in every real sense."); *Wright v. Georgia*, 373 U.S. 284, 291, 83 S.Ct. 1240, 10 L.Ed.2d 349 (1963); *NAACP v. Alabama*, 357 U.S. 449, 457–58, 78 S.Ct. 1163, 1169, 2 L.Ed.2d 1488 (1958) ("Novelty in procedural requirements cannot be permitted to thwart review, . . . ."); *Williams v. Georgia*, 349 U.S. 375, 383, 75 S.Ct. 814, 819, 99 L.Ed. 1161 (1955) ("where a State allows questions of this sort to be raised at a late stage and be determined by its courts as a matter of discretion, we are not concluded from assuming jurisdiction and deciding whether the state court action in the particular circumstances is, in effect, an avoidance of the federal right. A State court may not, in the exercise of its discretion, decline to entertain a constitutional claim while passing upon kindred issues raised in the same manner."); *Davis v. Wechsler*, 263 U.S. 22, 24,

44 S.Ct. 13, 14, 68 L.Ed. 143 (1923) ("Whatever springes the State may set . . . ., the assertion of federal rights, when plainly and reasonably made, is not to be defeated [in] the name of local practice."); *Ward v. Love County*, 253 U.S. 17, 22, 40 S.Ct. 419, 421, 64 L.Ed. 751 (1920) ("It therefore is within our province to inquire . . . whether [a federal right] was denied in substance and effect, as by putting forward non-federal grounds of decision that were without any fair or substantial support."); *Vandalia Railroad v. South Bend*, 207 U.S. 359, 367, 28 S.Ct. 130, 132, 52 L.Ed. 246 (1907) ("A case may arise in which it is apparent that a Federal question is sought to be avoided or is avoided by giving an unreasonable construction to pleadings . . . ."); *Rogers v. Alabama*, 192 U.S. 226, 230, 24 S.Ct. 257, 48 L.Ed. 417 (1904); *Carter v. Texas*, 177 U.S. 442, 448, 20 S.Ct. 687, 44 L.Ed. 839 (1900). *See also Chambers v. Mississippi*, 410 U.S. 284, 309, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (Rehnquist, J., dissenting).

### B.

The only opinion of the Court of Appeals for the Eighth Circuit which has considered *Wainwright* is *Collins v. Auger*, 577 F.2d 1107, 1110–11 (8th Cir. 1977), *cert. denied,* —— U.S. ——, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979), *vacating and remanding* 451 F.Supp. 22 (S.D.Iowa 1977). *Wainwright* was handed down after the District Court had granted federal habeas relief. The Court of Appeals therefore remanded *Collins v. Auger* to the District Court to certify additional findings as to "whether there had been a contemporaneous objection in the state trial court as to the due process issue and, if not, whether petitioner demonstrated 'cause' and 'prejudice' under the new standards adopted in *Sykes.*" *Id.* at 1108.

---

27. Chief Justice Seiler properly concluded in his dissenting opinion that any legitimate purpose of the state appellate rule of decision applied by the majority opinion had been served in this case. Indeed, he stated that it was useless to require a further "objection at trial because to do so would be to require a needless act." 544 S.W.2d at 571 (Seiler, C. J.,

dissenting). *Cf. United States ex rel. Henne v. Fike*, 563 F.2d 809 (7th Cir., 1977), *cert. denied sub nom. Henne v. Fike*, 434 U.S. 1072, 98 S.Ct. 1257, 55 L.Ed.2d 766 (1978) (per curiam) (when defendant timely moved to suppress an oral statement, an evidentiary hearing was held on the motion, and the appellate court reached the merits, *Wainwright* did not bar federal review.)

On remand, the District Court "found that the petitioner had failed to make an adequate contemporaneous objection . . . and thus was required to establish both cause . . . and prejudice." *Id.* at 1109. The District Court concluded that *Wainwright* required it to vacate its original order granting habeas relief because petitioner had established cause but had not established prejudice.

The Court of Appeals, however, vacated the District Court's order and directed that the original order granting habeas relief be reinstated. It concluded that under the circumstances of that case the petitioner had "asserted an adequate contemporaneous objection in the state proceedings" and that therefore the District Court should not have attempted to apply the "cause" and "prejudice" rule of *Francis v. Henderson* in the case before the court. *Id.* The Court of Appeals concluded that the record of the state court proceedings established that "the trial court, as well as the Supreme Court of Iowa was alerted to evidentiary and constitutional issues pertaining to the confession's admissibility." *Id.* It therefore held "that petitioner asserted an adequate contemporaneous objection in the state proceedings." *Id.*

The Court of Appeals, however, proceeded to make alternative findings relating to both factors of "cause" and "prejudice" included in the rule of *Francis v. Henderson* on the assumption that the Supreme Court might later decide that "petitioner did not properly challenge the admission of the statements and the 'cause' and 'prejudice' test required by *Sykes* is properly before us." *Id.* at 1110. Although we are convinced that the procedural circumstances of this case are comparable to those presented in *Collins v. Auger* and that petitioner asserted an adequate contemporaneous objection in the state proceedings, we believe that we should follow the pattern of making alternative findings as established by our Court of Appeals in *Collins v. Auger.*

We therefore find and conclude in the alternative that petitioner has established "cause" for his counsel's failure to object at trial because there is nothing in the record to suggest that defense counsel's failure to renew his objection to Detective Watson's testimony was a matter of trial strategy. Rather, it is clear that petitioner's counsel must have been unaware of the necessity for such repetitious action in light of the state trial judge's adverse ruling made earlier the same day. Petitioner's counsel's motion to strike Detective Watson's testimony before the case was submitted to the jury reflected every intention to preserve petitioner's federal claim for state appellate review.[28] We find and conclude that his apparent lack of knowledge of the necessity for multiple objections is sufficient cause under the circumstances.[29]

28. *Cf. Yowell v. Wyrick,* 387 F.Supp. at 424 n.4, where we quoted a brief filed in the Supreme Court of Missouri after that court had concluded that defense counsel had failed to preserve his client's federal claim for state appellate review by failing to make three separate objections in the state trial court: "[t]his writer, having first duly sworn himself, does hereby unequivocally state, affirm and swear, that in failing to make further objection at the time the evidence in question was offered and admitted, he (this writer) hadn't the foggiest notion that he might by such failure be waiving or forfeiting the defendant's constitutional right and claim to review on the issue of illegal search and seizure. We believed that having filed our pretrial motion to suppress, and having been heard exhaustively and at length on the same before trial, and the Court having fully heard and ruled the same adversely to defendant, that

the point was nevertheless preserved, if necessary, for review."

29. An additional circumstance in this case which supports and requires an alternative ground for our finding of "cause" relates to the assistance petitioner received from his counsel in the state court proceedings. Cases such as *Sincox v. United States,* 571 F.2d 876, 879–80 (5th Cir. 1978) (failure to object or appeal guilty verdict where juror expressed reasonable doubt was "inexcusable neglect" of great proportion, constituting "cause"), illustrate the difficulties created by *Wainwright's* new test requiring inquiry into whether the conduct of defense counsel supports a finding of "cause."

Petitioner in this case properly notes the nexus between inquiries concerning "cause" and the almost inevitable subsequent litigation presenting the Sixth Amendment question relating to the effectiveness of the assistance of

The Court of Appeals for the Eighth Circuit discussed the factor of "prejudice" in some detail in *Collins v. Auger,* 577 F.2d at 1110–11. It pointed out that the Supreme Court in *Wainwright* left open the question of whether prejudice was to be established under a harmless error test [30] or a more rigorous standard.[31] The Court of Appeals held that, applying either standard, petitioner Collins had established prejudice. Similarly, we hold that, applying either a harmless error or a more rigorous standard, petitioner in this case has established prejudice flowing from the admission of Detective Watson's testimony.

From our independent examination of the overall state court record we find and conclude in the alternative that it is impossible for this Court to conclude that the evidence presented as to the petitioner's guilt was substantial to a degree that would negate any possibility of actual prejudice resulting from the admission of that testimony.

We further find and conclude in the alternative that it is reasonable to assume that Detective Watson's testimony relating petitioner's alleged oral admissions substantially influenced the jury on the issue of guilt. Therefore, either under a standard of harmless error or a more rigorous standard, the admission of petitioner's incriminating statements was prejudicial to petitioner.

We therefore find and conclude that under the circumstances of the overall record of the state court proceedings petitioner established both "cause" and "prejudice" as would be required under the rule of *Francis v. Henderson,* assuming that rule is properly applicable to this case. For all the reasons stated, we find and conclude that the principles of *Wainwright v. Sykes* do not bar review of the merits of the *Miranda* question presented.

## V.

The second point relied upon by the Attorney General in his brief filed in this Court contends that "consideration of the merits of the petitioner's challenge to his inculpatory statement is barred by *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), since the petitioner makes only a bare allegation of a *Miranda* violation without questioning the actual voluntariness or reliability of the confession, and the petitioner received a full and fair opportunity to raise the issue in the state courts." [32] We find and conclude that

counsel. *See* Petitioner's Reply Brief at 6. Habeas counsel for the petitioner implies that if petitioner is unsuccessful in this proceeding that he will be forced to mount a new attack on petitioner's conviction based on Sixth Amendment ineffective assistance of counsel grounds. *Sallie v. North Carolina,* 587 F.2d 636, 640–41 (4th Cir., 1978), suggests that such a ground would be available.

The fact that petitioner's trial counsel failed to file any brief whatever in the Missouri Supreme Court is not going to go away. Counsel's failure to support and defend the decision of the Court of Appeals after the case was transferred to the Missouri Supreme Court must be viewed in light of principles applied in *Gray v. Swenson,* 302 F.Supp. 1162 (W.D.Mo. 1969), which related to a defendant's right to effective assistance of counsel on appeal.

**30.** The Court of Appeals stated: "Under [a] harmless error standard, prejudice could be established by showing that it is reasonable to assume the evidence wrongfully admitted influenced the trier of fact in determining the issues in the case. *See Chapman v. California,* 386 U.S. 18, 23 [87 S.Ct. 824, 17 L.Ed.2d 705] (1967); *Kotteakos v. United States,* 328 U.S.

750, 764–65, [66 S.Ct. 1239, 90 L.Ed. 1557] (1946)." 577 F.2d at 1110.

**31.** This test would require the federal habeas court to review the overall state record to make its own subjective evaluation of whether, without the challenged evidence, sufficient evidence was adduced by the prosecution to prove guilt beyond a reasonable doubt. The source for this test is *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). *See* 577 F.2d at 1110.

**32.** The State does not contend that *Stone v. Powell* bars federal habeas review of petitioner's Sixth Amendment claims. The question of whether *Stone* should bar federal habeas corpus review of Sixth Amendment claims which had been given "full and fair" consideration by the State courts was raised in the oral arguments and by Chief Justice Burger's dissent in *Brewer v. Williams,* 430 U.S. 387, 426–28, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1976) (Burger, C. J., dissenting). The Court did not discuss the issue in its opinion, *see* 430 U.S. at 413–14, 97 S.Ct. 1232 (Powell, J., concurring), raising the

the doctrine of *Stone v. Powell* does not apply to this case.

In *Stone v. Powell,* the Supreme Court ruled that the exclusionary rule mandating the inadmissibility of physical evidence which is found to have been taken in a search or seizure in violation of the Fourth Amendment should not be applied in a federal habeas corpus review of a state conviction "absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review." 428 U.S. at 495 n.37, 96 S.Ct. at 3053. The Court stated that exclusion of "typically reliable and often the most probative" physical evidence was a cost to our "rational system of criminal justice" which outweighed any incremental deterrent effect of the exclusionary rule. *Id.* at 490, 494, 96 S.Ct. at 3050, 3052. The Attorney General would have us extend this ruling to the Fifth Amendment area. This we refuse to do.

In *Stone* the Court specifically limited its ruling to constitutional claims arising under the Fourth Amendment. *See id.* at 495

n.37, 96 S.Ct. at 3052–3053 n.37 ("[O]ur decision today is *not* concerned with the scope of the habeas corpus statute as authority for litigating constitutional claims generally.") (emphasis in original); id. at 496–98, 96 S.Ct. 3037. (Burger, C. J., concurring.) [33] As Chief Justice Burger suggested, a confession taken in violation of Fifth Amendment guarantees is "inherently dubious"; therefore the alleged constitutional violation deserves close consideration on the merits.

The Court of Appeals for the Seventh Circuit is the only federal appellate court to consider whether to apply the doctrine of *Stone v. Powell* to a violation of the *Miranda* rules.[34] It refused. *See United States ex rel. Henne v. Fike,* 563 F.2d 809, 812 (7th Cir. 1977), *cert. denied sub nom. Henne v. Fike,* 434 U.S. 1072, 98 S.Ct. 1257, 55 L.Ed.2d 766 (1978) (per curiam).

▮ We agree with that ruling, and consequently we find and conclude that the doctrine of *Stone v. Powell* does not apply to this case.[35] We now turn to the merits of petitioner's *Miranda* claims.

strong inference that the Court refused to extend *Stone* to the Sixth Amendment context.

If the issue were raised clearly in this case, we would refuse to extend *Stone* to the Sixth Amendment violation we have found in this case.

**33.** "The operation of the rule is therefore unlike that of the Fifth Amendment's protection against compelled self-incrimination. A confession produced after intimidating or coercive interrogation is inherently dubious. If a suspect's will has been overborne, a cloud hangs over his custodial admissions; the exclusion of such statements is based essentially on their lack of reliability. This is not the case as to reliable evidence—a pistol, a packet of heroin, counterfeit money, or the body of a murder victim—which may be judicially declared to be the result of an 'unreasonable' search. The reliability of such evidence is beyond question; its probative value is certain." 428 U.S. at 496–97, 96 S.Ct. at 3053. (Burger, C. J., concurring).

**34.** The State accurately states that the Supreme Court in dictum in *Wainwright v. Sykes* noted the possibility of applying the *Stone v. Powell* doctrine to a claimed Fifth Amendment violation, but the Court resolved the case on alternative grounds. *See* 433 U.S. at 87 n.11, 97 S.Ct. 2497. *See also White v. Finkbeiner,*

570 F.2d 194, 200 and n.2 (7th Cir. 1978) (dictum).

**35.** We think it should be obvious that if we were to conclude that the rationale of *Stone v. Powell* is applicable to this case, we would find that petitioner has shown that he was denied "a full and fair litigation of [his federal] claim . . . on direct review," within the meaning of *Stone v. Powell,* for all of the reasons stated in our discussion of *Wainwright.* We reject the Attorney General's argument that petitioner received a "full and fair" review of his federal claims by the Missouri Supreme Court.

Contrary to the Attorney General's contention, nothing in *Lewis v. Gourley,* 560 F.2d 393 (8th Cir.), *cert. denied,* 434 U.S. 987, 98 S.Ct. 618, 54 L.Ed.2d 483 (1977), suggests a different conclusion. The Missouri Court of Appeals, in its decision affirming petitioner's conviction on direct appeal, *State v. Lewis,* 526 S.W.2d 49, 53 (Mo.App.1975), noted that petitioner "did not contest the merits of the prior pretrial ruling" on that appeal.

The other cases cited by the Attorney General, *Gates v. Henderson,* 568 F.2d 830 (2d Cir. 1977), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978) (en banc), and *O'Berry v. Wainwright,* 546 F.2d 1204 (5th Cir.), *cert. denied,* 433 U.S. 911, 97 S.Ct. 2981, 53 L.Ed.2d 1096 (1977), are also distinguishable on their

## VI.

The third and final point relied upon by the Attorney General in his brief filed in this Court argues on the merits that "the state trial court did not commit error of constitutional magnitude by refusing to exclude the petitioner's statement to Kansas City, Missouri, police officers, notwithstanding their failure to give the petitioner a *Miranda* warning, since the statement elicited was not the result of 'custodial interrogation' inasmuch as the petitioner voluntarily accompanied police to police headquarters and since his freedom of action was not restrained in any significant way." [36]

The state trial judge denied petitioner's motion to suppress on dual grounds: (1) the petitioner "had received the [*Miranda*] warning four times" and (2) "the further interrogation and investigation was not a custodial interrogation." [Tr. 61–62]. In ruling petitioner's motion to strike Detective Watson's testimony, the state trial judge reversed the order in which the grounds were stated by ruling that "the motion will be overruled on two bases. . . First, that the interrogation was not a custodial interrogation. Secondly, that the defendant had been adequately warned previously concerning his rights in the matter." [Tr. 212].

The state trial judge did not indicate which of the two "bases" for his decision he believed was the most significant. He made no findings whatever to support his conclusion that the police questioning was not a "custodial interrogation." His references to the prior warnings which had been given petitioner were, or course, references to the *Miranda* warnings properly given the petitioner by the State Highway Patrol and by the Warrensburg police back in September, 1973, approximately two months before petitioner was questioned by the Kansas City police.

The Attorney General does not even attempt to sustain the state trial judge's action on the ground that the Kansas City police were somehow relieved from giving the petitioner *Miranda* warnings because he had received such warnings from other police officers two months earlier.[37] The Attorney General does contend, however, that petitioner's interrogation by the Kansas City police on November 22, 1973, was not a "custodial interrogation" and that, therefore, petitioner was not entitled to *Miranda* warnings under the circumstances.

The only state court judge who made any specific findings in regard to the nature of petitioner's interrogation properly concluded that *Miranda* warnings were required under the circumstances. That judge also

facts. In both cases, as in *Wainwright v. Sykes,* petitioners totally failed to raise their constitutional objection in the state trial court.

In this case, the Missouri Court of Appeals did provide petitioner with a full and fair direct review of the merits of his federal claims and accordingly ordered a new trial. We could not conclude, however, that petitioner received a full and fair litigation of his federal claims in the total state court appellate proceedings in this case for the reason that the Supreme Court of Missouri set aside the decision of the Missouri Court of Appeals and affirmed petitioner's conviction on technical procedural grounds completely irrelevant to the merits of petitioner's federal claims.

**36.** "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been

taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1964).

**37.** The complete answer to any argument which may have been made on that score is stated by Chief Justice Seiler when he said that "the majority opinion . . . implies that because warnings were given by different police agencies some two months prior to the incident in question, appellant had sufficient knowledge of his rights at the time of questioning. . . . The idea that residual knowledge from a warning delivered to a suspect by the police at the time of an arrest several months earlier is sufficient was expressly disavowed by the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 471–72, [86 S.Ct. 1602, 1626, 16 L.Ed.2d 694] . . . ." *State v. Toliver,* 544 S.W.2d at 570 (Seiler, C. J., dissenting). *See also* 384 U.S. at 475, 86 S.Ct. 1602; *id.* at 498–99, 86 S.Ct. 1602.

concluded that the trial court record could not support a finding that the petitioner had voluntarily waived his constitutional rights. Consistent with familiar principles of comity, we find and conclude that Chief Justice Seiler properly applied controlling federal principles to the findings which we find and conclude were reliably made by him:

> Appellant's self-incriminatory statements to the Kansas City police should not have been admitted into evidence because he was neither apprised of his rights to remain silent and to be represented by counsel, nor did he voluntarily waive these rights. . . . In the case before us, two officers, who knew that the appellant was charged with the theft of a gun which they had in their possession as the murder weapon in a homicide they were investigating, drove to appellant's residence in an unmarked state highway patrol car.[38] According to their own testimony, upon arriving at appellant's residence, they got out of the car, went up to the house, pounded repeatedly on the door, "I really whammed it," and yelled for appellant to come out. The officers then placed appellant in the front seat of the car with one of the officers and a companion of appellant in the back seat with another officer. The two were driven downtown to police headquarters, separated from one another, and the appellant was questioned for one hour with three officers present. The foregoing hardly represents the general on-the-scene impromptu questioning the Supreme Court meant to leave unaffected by *Miranda*. It is true one of the detectives also testified that appellant simply accepted an "invitation" to go downtown to police headquarters and that he was free to go at any time, although no one informed him of that fact, but this uncommunicated, self-serving, subjective belief on the part of the police does nothing, in my opinion, to lessen the custodial aspects of defendant's questioning. Appellant was deprived of his freedom in a significant way as contemplated by *Miranda*, and consequently, he has a right to *Miranda* warnings. [544 S.W.2d at 570–71 (Seiler, C. J., dissenting)].[39]

The Court of Appeals for the Eighth Circuit has considered the question of when particular police questioning must be considered a custodial interrogation. *See South Dakota v. Long*, 465 F.2d 65 (8th Cir. 1972), *cert. denied sub nom. Hale v. South Dakota*, 409 U.S. 1130, 93 S.Ct. 951, 35 L.Ed.2d 263 (1973).[40] In that case a suspect

---

**38.** The Attorney General argues that the Metro Squad was investigating a homicide, not a theft of guns. Such a distinction is not supported by the record. Detective Watson testified specifically that Stevenson had been picked up "to ask him about some weapons that were taken from Warrensburg, Missouri," (Transcript of Preliminary Hearing at 7). The record does not support a finding that this mission was changed when petitioner was picked up and questioned the next day. The Missouri Court of Appeals properly rejected such a distinction. *See* Court of Appeals Opinion at 611.

**39.** Chief Justice Seiler also stated the following principles and conclusions which we find are consistent with applicable federal standards:

Moreover, we have recognized the coercive atmosphere surrounding such police requests. In *State v. Young*, 425 S.W.2d 177, 181 n. 4 (Mo.1968), we quoted with approval *State v. Owens*, 302 Mo. 348, 259 S.W. 100, 102 (banc 1924), to the effect that:

" . . . [i]f an officer appears at a person's home, and in his official character demands the privilege of searching the premis-

es, the owner of the premises who yields peaceably and silently to the official demand is as much under constraint as if he had forcibly resisted official interference."

The same holds true for the police request here to go downtown. It is permeated with the coercive atmosphere presented by the apparent force of law. That required a *Miranda* warning be given. 544 S.W.2d at 571 (Seiler, C. J., dissenting).

Judge Bardgett did not consider it necessary to make any detailed comment on the factual circumstances to support his opinion that "*Miranda* required that the defendant be advised of his rights prior to the police interrogation in the instant case." *Id.* at 573 (Bardgett, J., dissenting).

**40.** *See also Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (per curiam); *United States v. Hall*, 421 F.2d 540, 545 (2d Cir. 1969), *cert. denied*, 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 398 (1970).

had been accompanied continuously by a sheriff or his deputies for a considerable period before he made an incriminating statement. The defendant was not placed under arrest, even when the sheriff observed evidence in the defendant's dormitory room which focused suspicion on the defendant. The Court of Appeals held that the period during which the defendant was accompanied by police officers was a "significant deprivation of [his] freedom of action" from which the defendant "could have reasonably believed that he was in custody . . . ." 465 F.2d at 70. This, the Court held, was a type of custodial interrogation requiring *Miranda* warnings. On the other hand, when the same defendants were asked to appear at the sheriff's office later that day and voluntarily did so, and when the suspects were not guarded and allowed to leave and did leave after questioning, the Court of Appeals found that they were not in custody.

*Oregon v. Mathiason, supra,* teaches that the fact the interrogation may have been conducted in a "coercive environment" is not decisive. On the other hand, the place that interrogation was conducted is likewise not controlling, *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). The test in cases in which a formal arrest has not been made is whether under the circumstances of a particular case the person interrogated has been deprived of his freedom of action in some significant way. A finding that significant restrictions were in fact placed on the person's freedom requires a finding that the person must be considered to be "in custody" within the meaning of *Miranda* and thus must be warned of his rights before questioning. Relevant factors include the place of the questioning, how the participants got there, whether the person was truly free to leave, and the conduct and identity of persons engaged in the questioning.

 Our independent examination of the entire overall State court record supports our finding and conclusion that both Chief Justice Seiler and Judge Bardgett properly concluded that the petitioner was entitled to *Miranda* warnings under the circumstances of this case.[41] Petitioner was subjected to a custodial interrogation which had not been prefaced by *Miranda* warnings[42] and the admission of those statements violated his constitutional rights under the Fifth Amendment.

### VII.

We find and conclude that we are not barred from reviewing the merits of petitioner's separate constitutional claims and that for the reasons we have stated, petitioner is entitled to appropriate federal habeas corpus relief. Consistent with our practice in past cases, the State of Missouri will be afforded an opportunity to begin new trial proceedings before issuance of the writ of habeas corpus to which we have found petitioner entitled.

41. We note that if petitioner's co-defendant Stevenson had been on trial the question presented in this case would not have arisen. The Kansas City police recognized that their interrogation of Stevenson was a formal custodial interrogation. It is therefore significant that the police reports concerning the questioning of Stevenson and the later questioning of the petitioner are in substantially the same form. *See* Exhibits C and F to Stipulation. Both referred to the interrogation as an "interview" following a "request" by police officers for the suspect to visit police headquarters, but the Kansas City police properly recognized that their "request" to Stevenson was equivalent to an arrest.

Indeed, Detective Watson conceded in his testimony that the "request" for Stevenson to accompany him to police headquarters was in fact an arrest which required *Miranda* warn-

ings. [Transcript of Preliminary Hearing at 5–8]. Detective Watson never attempted to explain why the Kansas City police recognized a need to give *Miranda* warnings to Stevenson on Wednesday but failed to recognize the same need under virtually identical circumstances when they questioned petitioner on Thursday.

42. The Attorney General does not attempt to argue that petitioner waived his rights under the Fifth Amendment by his confession. Such an argument would have been untenable in light of the fact that there is no evidence in the State court record to support a finding that petitioner made a knowing and intelligent waiver of his rights. *See Miller v. United States,* 396 F.2d 492, 496 (8th Cir. 1968), *cert. denied,* 393 U.S. 1031, 89 S.Ct. 643, 21 L.Ed.2d 574 (1969).

For the reasons stated, it is

ORDERED (1) that petitioner is entitled to the federal habeas relief prayed for on both the separate and alternative grounds above stated. The writ shall not issue for thirty (30) days in order to afford the State of Missouri, through its Attorney General, the opportunity to have petitioner's conviction set aside or declared to be invalid, and to begin new trial proceedings. It is further

ORDERED (2) that if no such trial proceedings are begun within thirty (30) days from the date of this order, the writ shall issue. It is further

ORDERED (3) that the Attorney General shall keep this Court advised of all proceedings that may be taken consistent with our stay of the issuance of the writ. It is further

ORDERED (4) that the thirty (30) day period above provided may be enlarged upon written application of the Attorney General for good cause shown before the expiration of the thirty (30) day period.

## A P P E N D I X

Respondent's Exhibit D

MISSOURI COURT OF APPEALS

KANSAS CITY DISTRICT

| | |
|---|---|
| STATE OF MISSOURI, )<br>)<br>Respondent, )<br>v. )<br>)<br>RAYMOND L. TOLIVER, )<br>)<br>Appellant. ) | No. KCD 27,955 |

Appeal from the Circuit Court of Johnson County, Missouri; Honorable Robert G. Russell, Judge.

Before TURNAGE, P. J., and WASSERSTROM and SOMERVILLE, JJ.

Defendant appeals his conviction of stealing over $50.00. On finding defendant subject to the Second Offender Act, sentence was imposed by the court of ten years imprisonment. Sections 560.156 and 560.161, RSMo.1969.

Defendant raises a number of issues, but the dispositive point is the erroneous admission of a statement made by defendant to a Kansas City police officer. The other points raised by the defendant will be dealt with somewhat summarily.

The jury could have reasonably found that on September 13, 1973, defendant and Richard Stevenson entered the Wal-Mart Store in Warrensburg, Missouri, shortly before 1:30 P.M. Stevenson first inquired of a clerk, Mrs. Cates, about a restroom. About five minutes later, defendant inquired of Mrs. Cates about some Coleman heaters. At the time Mrs. Cates was watching the Sporting Goods Department for the regular clerk who was on his lunch break. In the Sporting Goods Department and behind the counter was a locked display case containing a number of hand guns. While defendant was talking with Mrs. Cates about the Coleman heaters, they were at a point in the store out of sight of the gun case. Defendant talked with Mrs. Cates for about five minutes when she found she was not able to answer all of his questions and summoned the department manager. At about the time the department manager was being summoned, Harold Dawson came to Mrs. Cates and informed her that a man, later identified as

Stevenson, was stealing hand guns from the case behind the counter. On learning this, Mrs. Cates went toward the gun case and by this time Stevenson was in the aisle. Dawson testified that he had seen Stevenson on his hands and knees removing hand guns from the case and putting them in his pocket. Dawson was somewhat more observant than others perhaps since his stepson was the person in charge of the Sporting Goods Department and was the one who was on his lunch break at the time these events took place. Dawson stated he asked Stevenson what he was doing and Stevenson told him he was the janitor. It .was after this conversation that Dawson spoke to Mrs. Cates since he did not recognize Stevenson from his many trips to the store as being an employee. When Mrs. Cates encountered Stevenson, the defendant was close behind her and rather than Mrs. Cates making any inquiry of Stevenson, the defendant told Stevenson that a man said that Stevenson had been seen stealing guns from the gun case. Stevenson thereupon denied that he had stolen any guns or had any guns. Stevenson and defendant continued in the store for at least a short time and Dawson proceeded to the front of the store, apparently with some intent to observe the defendant and Stevenson. Mrs. Cates testified that she later saw Stevenson with an oil pan in his hand, a type which would be used to change the oil in an .automobile.

After a period of time, which is not shown in the record, Dawson observed Stevenson and defendant go to the front of the store near a check-out counter which was unmanned at the time. Dawson said the two men faced each other but he could not observe Stevenson because he was the smaller of the two and the defendant was between Dawson and Stevenson. Dawson stated there was much arm movement on the part of both Stevenson and defendant, and although not clear from the record, this arm movement apparently concerned the oil pan also. The oil pan was placed on a counter and after the arm movement described for the jury, but unfortunately which is not described for this court, Dawson observed Stevenson and the defendant

leave and enter a car. Apparently Dawson gave this information to the store personnel because at some unstated time later in the day, Trooper Henley, of the State Patrol, stopped a car bearing a description he had received from Warrensburg. Trooper Henley stated this car was traveling about eighty miles per hour and he finally stopped it a few miles after he first saw it on the outskirts of Lee's Summit. Trooper Henley stated the defendant was driving and Stevenson and another man by the name of Garner were in the car. Trooper Henley gave defendant his *Miranda* warning but defendant assured him this was unnecessary since he had done nothing wrong. Search of the defendant, Stevenson and Garner produced nothing in the way of handguns, and a later search of the automobile also failed to reveal any handguns.

Trooper Henley testified the defendant was not wearing a poncho nor trousers which were tight around the ankle as Dawson and Mrs. Cates testified he was dressed at the time he was in the store.

Defendant was later that evening returned to Warrensburg where he was also given his *Miranda* warning by a Warrensburg police officer, but defendant made no statement. He was charged with stealing and released on bond.

On November 22, 1973, Detective Maurice Watson of the Kansas City Police Department was investigating a homicide which occurred in Kansas City. A hand gun was found to have been used in this homicide and the serial number on such gun was found to match the serial number of a gun taken from the Wal-Mart store. Detective Watson had known the defendant for about twelve years and knew the defendant was charged with the stealing of hand guns from the Wal-Mart store. Detective Watson stated his superior requested him to go to the defendant's home to see if the defendant would go to the Kansas City Police Headquarters for an interview. Detective Watson went to the defendant's home and stated he requested defendant to accompany him down to headquarters and the defendant agreed to do so. Detective Watson

stated the defendant was taken to a squad room and was questioned for about one hour. Detective Watson stated that at no time did he or anyone else give any *Miranda* warnings to the defendant. Watson further testified he knew at the time he was talking with the defendant the defendant was charged with the stealing of hand guns from the Wal-Mart store and indeed it is obvious the sole reason for the interview with the defendant was because of his alleged connection with the theft of a gun which had been used in a homicide. Detective Watson stated the defendant was not suspected in the homicide, and was only being interviewed along with some thirty-five other people. He stated the defendant was not placed under arrest, was not fingerprinted or photographed, or subjected to any of the other usual arrest procedures. He further stated the defendant was free to leave at any time and was free to decline the invitation to go to police headquarters in the first place.

Detective Watson stated the defendant told him that another man took the guns from behind the counter and put them on a shelf. The defendant stated he picked the guns up from the shelf and carried them out of the store in his clothing. He stated he brought the guns to Kansas City and sold them for some dope.

Defendant's counsel had filed a pre-trial motion to suppress the statement given by defendant to Detective Watson, but this motion was overruled. When Detective Watson testified during the trial, defendant made no objection to his testimony in which he testified fully about the statement given him by the defendant. In fact, defendant's counsel cross-examined Detective Watson concerning the statement and the circumstances surrounding the giving of the statement.

On this appeal defendant argues the admission of defendant's statement as given to Detective Watson should have been suppressed because such statement was given without the *Miranda* warning having been given.

While it does not appear in the record, the defendant states in his brief, and the State has not denied such statement, that Mr. Fitzgerald entered his appearance formally in the Magistrate Court of Johnson County on September 17, 1973, as attorney for the defendant. Presumably bond was set at that time and a date for the preliminary hearing set because defendant was at home on November 22 when Detective Watson decided to interview him. A preliminary hearing was held on February 8, 1974.

By failing to object during the trial when Detective Watson testified concerning the statement, defendant has failed to preserve the issue of the validity of the statement for appellate review even though he filed a pre-trial motion to suppress. *State v. Hampton*, 509 S.W.2d 139 (Mo.App.1974). However, defendant complains of the admission of this statement in violation of his constitutional right to remain silent and of his right to be advised of his constitutional right to remain silent and to have counsel during any interrogation. Although defendant has failed to properly preserve this claim of error, it is necessary to examine this contention under the Plain Error Rule 27.20(c) since a constitutionally protected right is involved. *State v. Henderson*, 510 S.W.2d 813 (Mo.App.1974).

A very similar situation to that here occurred in *State v. Witt*, 422 S.W.2d 304 (Mo.1967). In *Witt* the defendant was arrested and arraigned in the Magistrate Court and a date for the preliminary hearing was set. The defendant retained an attorney who entered his appearance in the Magistrate Court and who met with the prosecuting attorney in Magistrate Court to agree upon a date for the preliminary hearing. After the defendant's attorney was well known in the case, the defendant was taken to the prosecuting attorney's office and after being questioned without the knowledge or consent of his counsel, gave a statement. The court in *Witt* quoted with approval from *State v. Herman*, 3 Ariz.App. 323, 414 P.2d 172 (1966):

" 'In the instant case, the police officers know that the defendant was represented

by counsel. The defendant had been arrested and defendant's attorney had appeared before the Justice of the Peace to set bond and the date of the preliminary examination. We therefore hold that the statements (and the fruits thereof) obtained from the defendant after arrest and arraignment before the Justice of the Peace and while he was represented by counsel, are inadmissible because said statements were obtained outside the presence of defendant's attorney. To allow interrogation of an accused outside the presence of his attorney is as much a denial of the right of counsel as the refusal to allow an accused to obtain the services of an attorney. Where, as here, the defendant had an attorney of record from the time of the arraignment in the Justice Court, the defendant may not be questioned outside the presence of counsel without counsel's permission.' "

There are only two possible distinctions between the factual situations in *Witt* and *Herman* and the case at bar. In *Witt* the prosecuting attorney knew the defendant had an attorney [although the prosecutor stated he thought the attorney had appeared for the arraignment only and was not going to represent defendant thereafter] and the interrogation was on the subject of the same crime for which the defendant was subsequently tried. Neither distinction appears to remove this case from the holding in *Witt.*

Here Detective Watson knew the defendant was charged in Johnson County, Missouri. He also knew defendant was on bond because the defendant was at home in Kansas City. With these facts in hand, Detective Watson was placed on notice to make inquiry to determine if the defendant had counsel in connection with his felony charge. Information concerning counsel could have been readily obtained from Warrensburg, or from the defendant himself. However, Detective Watson made no effort to determine if defendant had counsel.

In addition, Detective Watson could have made inquiry to see if defendant would be willing to voluntarily waive his right to have counsel present during the interrogation. There was no evidence the defendant in any way knowingly and voluntarily waived his right to have his counsel present or notified. Absent any effort on the part of Detective Watson to determine if defendant had counsel, and absent any evidence of any waiver on the part of defendant to have his counsel notified or present, the rule in *Witt* will be applied. This factual distinction does not remove this case from the ruling in *Witt* because even though Detective Watson did not *know* at the time defendant had counsel, he was possessed of sufficient facts to have caused him to make some inquiry to determine if defendant did have counsel. The fact that Detective Watson did not have actual knowledge did not mean that he could ignore the knowledge he did have which should have prompted him to determine that defendant did have counsel and to either notify counsel or obtain a knowing and voluntary waiver from defendant. Having failed to take either step, the statement was inadmissible under the holding in *Witt.*

The other distinction which might be drawn is the fact the interrogation in this case was prompted by another crime distinct from the offense for which the defendant was subsequently tried. However, the two crimes became closely connected when Detective Watson knew a gun taken in the theft with which defendant stood charged had been used in the homicide. It is readily apparent, and was unquestionably clear to Detective Watson at the time, that any interrogation of the defendant would necessarily involve the details of how the defendant was connected with the gun taken in the theft and used in the homicide. Thus, Detective Watson knew any interview with the defendant would cover any and all connection the defendant had with the gun from the beginning of his connection to the end. This necessarily involved the crime for which defendant was later tried, and eliminated any distinction between this case and the *Witt* case based on any difference between the crime for which the defendant was tried and the subject crime on which interrogation took place.

As noted, the two distinctions which might be raised are not sufficient to remove this case from the holding in *Witt*. For that reason the statement given to Detective Watson was inadmissible and should have been suppressed.

As revealed from the statement of facts heretofore given, it is apparent the State's case rests on an entirely different footing without the admission of the defendant's statement given to Detective Watson. It can certainly be said that without this statement the State does not have nearly as strong a case. It is obvious the defendant would be in a much different position before the jury without the statement in evidence. The resultant material weakening of the State's case by excluding the statement is sufficient to demonstrate the admission of the statement affected defendant's substantial rights. This resulted in manifest injustice to defendant. Under Rule 27.20(c) this is plain error requiring a new trial.

Defendant also complains of the restriction placed upon him by the trial court by which defendant was not permitted to comment on the failure of the State to produce a witness endorsed on the information. There was no showing this witness was any more available to the State than he was to the defendant. In that situation there was no unfavorable inference which could be drawn from the failure of the State to produce such witness. For that reason there was no error in refusing to allow defendant's counsel to comment on this failure by the State. *State v. Davis*, 504 S.W.2d 221 (Mo.App.1973).

Defendant also complains of the failure of the trial court to rule that in the event the defendant took the stand the State could inquire concerning previous convictions. It is well settled in this State the State is absolutely entitled to inquire about prior convictions of a witness. *State v. Busby*, 486 S.W.2d 501 (Mo.1972). Defendant further complains about the discovery permitted to the State under Rule 25.34. Defendant attempts to raise a constitutional challenge to such rule. However, the defendant has failed to show that he has been harmed by the operation of this rule. Without showing such harm, defendant is not in a position to challenge the constitutionality of the rule. *State v. Brown*, 502 S.W.2d 295 (Mo.1973).

The other complaint raised by the defendant concerns the question of the right of the court to give a sentence in this case to run concurrently with defendant's sentence in the State of Kansas. This may or may not be a problem in the future. If it is, the parties may want to consult *Heitman v. State*, 518 S.W.2d 189 (Mo.App.1974) and the cases therein cited.

For the reasons noted, the judgment is reversed and the cause is remanded.

All concur.

William E. Turnage,
Presiding Judge.